**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a corporation, Plaintiff,**

v.

**James P. CROOK and Norman Edward Crook, Joe Rodriguez and L. A. Herrald, Defendants.**

**Civ. A. No. 265.**

United States District Court
S. D. West Virginia.

Aug. 12, 1961.

Scherer, Bowers, File & Hodson, Beckley, W. Va., for plaintiff.

Clay S. Crouse, Beckley, W. Va., for defendants James P. Crook and Norman Edward Crook.

Anthony J. Sparacino and Warren A. Thornhill, III, Beckley, W. Va., for intervener-defendants Joe Rodriguez and L. A. Herrald.

FIELD, Chief Judge.

In this suit for a declaratory judgment, plaintiff insurance company seeks a declaration of its rights and responsibilities under a certain policy of liability insurance issued to the defendant, James P. Crook. After the suit was filed, upon motion, Joe Rodriguez and L. A. Herrald were permitted to intervene as parties defendants.

## Findings of Fact

### I

Plaintiff is a corporation organized and existing under the laws of the State of Pennsylvania.

### II

All of the defendants are citizens and residents of the State of West Virginia.

### III

Plaintiff issued to the defendant, James P. Crook, of White Oak, Raleigh County, West Virginia, a policy of liability insurance designated as a Family Automobile Policy, No. F–45–5682, covering a policy period from April 10, 1960, to April 10, 1961. The owned automobile of the named insured under said policy was a 1957 Chevrolet ½-Ton Pickup Truck bearing Serial No. 3A57N–111664. The limits of liability in said policy for bodily injury are $20,000 for each person, $40,000 for each occurrence and for property damage $5,000 for each occurrence.

Under the policy the persons insured are:

(a) With respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;

(b) With respect to a non-owned automobile,

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer, provided the actual use thereof is with the permission of the owner.

The policy defined a "non-owned automobile" as any automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile. The policy defined "relative" as a relative of the named insured who is a resident of the same household.

### IV

James P. Crook, the named insured, resided at White Oak, West Virginia, on August 17, 1960, and had so resided there for some time prior to that date with his

wife, Wanda Crook, and their children. The house contained five rooms. Norman Edward Crook is the son of James P. Crook and Wanda Crook and resided at home until his induction in the Armed Forces. On August 17, 1960, Norman Edward Crook was on leave from the Army and was staying at the home of his parents.

## V

Arleigh Cole is a brother of Wanda Crook and the uncle of Norman Edward Crook. He has been divorced for several years and since his divorce has led a somewhat nomadic pattern of life. He has lived or visited from time to time with members of his family, or has stayed in hotels or rooming houses. For a number of months in the year 1959, he worked on a construction job at The Beckley National Bank in Beckley, West Virginia, and during that time stayed in the home of the Crooks in White Oak. During that period he sometimes drove to work with James P. Crook, but more frequently travelled to and from work with other parties. In October, 1959, he left Beckley and went to Florida, where he resided in an apartment and worked on various construction projects. While in Florida he purchased a Ford automobile and returned to West Virginia sometime during the Easter Season in 1960. On his return to West Virginia he resided with the Lilly family in Nimitz for several months and also stayed a short time with his mother at Sand Knob. Three or four days prior to August 17, 1960, he arrived at the Crook's home in White Oak. He brought some of his personal belongings into the house, slept in one of the rooms with other members of the family, ate his meals with the family and to a large degree participated in their social and family activities. He paid no room or board on this occasion nor had he paid any room or board during the months he stayed at the Crook's home in 1959. During the period prior to August 17, 1960, he did not drive the truck owned by James P. Crook nor did Crook drive his Ford automobile. On at least one occasion Norman Edward Crook drove the Ford automobile but on that occasion Norman Edward Crook asked his uncle for permission to use the vehicle.

## VI

On the afternoon of August 17, 1960, Norman Edward Crook asked permission to drive the Ford automobile for the purpose of making arrangements for a barbecue outing that evening and such permission was given by Cole. The barbecue outing was to be attended by the Crook's family and some of their friends and Cole intended to participate in this activity. A short time after leaving his home and while travelling on State Route 3, the car driven by Norman Edward Crook collided with an automobile owned by the Department of Public Safety of the State of West Virginia which was being driven by L. A. Herrald with Joe Rodriguez and H. C. Bartlett riding therein as passengers. The automobile of the Department of Public Safety was extensively damaged and all of the occupants received personal injuries. Claims have been made against Norman Edward Crook and Arleigh Cole for the damages and injuries sustained as a result of this occurrence.

## VII

After the accident Cole remained at the Crook residence for a few days and then went to Hinton, West Virginia, where he has been residing at a hotel. Since the accident he has visited in the Crook home from time to time, occasionally staying overnight.

### Conclusions of Law

The conclusions of law in this case require to some degree an appraisal and evaluation of the facts hereinabove set forth. Clearly Norman Edward Crook was a person insured under the policy since he was a relative of the named insured as defined therein and the only question, of course, is whether he was driving a "non-owned automobile" at the time of the unfortunate occurrence. Whether the vehicle being driven by him was a "non-owned automobile" requires a determination of whether Cole was a "relative" within the meaning of the

policy at the time of this accident. If Cole was a relative within the policy definition then there would be no coverage and, accordingly, the basic question is whether in addition to being a relative by marriage to James P. Crook, he was also a resident of the same household. To my mind, the evidence in this case does not indicate that he was a resident of the Crook household at the time of the accident. While it is true that in 1959 he had resided in the Crook home for some several months, that arrangement terminated when he went to Florida in October of that year. I do not believe that the elements incident to his prolonged stay in 1959 can be related to his brief stay prior to August 17, 1960, for the purpose of considering him to be a resident of the household at that later time. In both State Farm Mutual Automobile Insurance Company v. James, 4 Cir., 80 F.2d 802, and Aler v. Travelers Indemnity Company, D.C., 92 F.Supp. 620, the evidence presented a much stronger picture in this regard than does that in the instant case. In both of those cases there was a continuity of residence, an integration of activities and a continuous availability of the vehicles involved to a degree which is lacking in the present case. The Courts in those cases very properly took the position that to recognize coverage would, in effect, permit the parties to obtain insurance coverage on two household vehicles merely by paying the premium on one. Such is not the case here. There is no evidence here of either availability or interchangeable use of the vehicles under consideration. Norman Edward Crook, the driver of the vehicle, was an individual who fell within the general purview of insurance coverage under the Crook policy. Under these circumstances, I make the following conclusions of law:

I

This Court has jurisdiction of this diversity action under the provisions of 28 U.S.C.A. § 2201.

II

Norman Edward Crook was on August 17, 1960, a person insured under the terms of the policy with respect to a non-owned automobile.

III

Arleigh Cole was not a "relative" within the meaning of the policy provisions.

IV

The vehicle being driven by Norman Edward Crook at the time of the accident on August 17, 1960, was a "non-owned automobile" within the policy provisions and definitions.

V

Norman Edward Crook is entitled to indemnification and coverage within the limits of the policy issued by the plaintiff in regard to the accident which occurred on August 17, 1960.