Edward Horst, Plaintiff-Appellee, v. Morand Brothers Beverage Co., an Illinois Corporation, Defendant-Appellant.

Gen. No. 51,742.

First District, Third Division.

May 23, 1968.

71

Richard C. Bleloch and Carmen V. Speranza, of Chicago, for appellant.

Schaffenegger & Watson, of Chicago (Jack L. Watson, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

In this personal injury action arising from a vehicular collision, a judgment for $19,500 was entered in favor of the plaintiff, Edward Horst, at the termination of a jury trial.

On appeal the defendant, Morand Brothers Beverage Co., maintains that: (1) a verdict should have been directed in its favor; (2) the verdict was contrary to the manifest weight of the evidence; (3) improper evidence was admitted; (4) erroneous instructions were given, and (5) the verdict was the result of prejudicial argument.

About 4:00 a. m. on Monday, June 16, 1958, Horst was driving a bakery truck north on State Street in Chicago. He was on his way downtown to make deliveries for the bakery which employed him. The weather was clear, traffic was sparse, and he was travelling approximately 27 miles per hour. He had the green light as he crossed 39th Street, but halfway through the intersection his truck was struck on the left side by an auto travelling east on 39th which had ignored the red light. The collision turned the truck on its side and pushed it onto the sidewalk on the northeast corner. Horst was knocked unconscious as the truck turned over.

He was taken to a nearby hospital where first aid was administered to him. He was removed to another hospital where he was examined by his family physician and was then sent home where he spent the remainder of the week. He returned to work the following Monday, taking along his ten-year-old son to assist him with deliveries. On the same day an extremely itchy rash broke out on his legs. The condition spread and in August he was admitted to a hospital where he spent four days. He was away from work an additional two weeks at this time. By October, the rash and the swelling which accompanied it had reached such magnitude that he was forced to discontinue working. His legs and feet were so swollen that he was unable to get his shoes on. He did not return to work until March of the following year.

73

Between the time of the accident and December 1958 Horst visited his family doctor on approximately 33 occasions. He was also treated by a dermatologist who testified that the plaintiff's skin condition—diagnosed as erythema multiforme—could only have been caused by the accident. The plaintiff's medical expenses amounted to approximately $400 and at the time of the accident his net salary was $120 per week. All of his medical problems had abated by the time of trial.

The identity of the driver of the automobile was never ascertained. When the police arrived the driver had disappeared and ownership of the auto was traced through its license to Morand Brothers.

The defendant admitted owning the auto but denied operating it at the time of the accident. Donald Romano, Morand's general manager, testified that the car was one of five which belonged to the corporation and that it had been assigned to him for business and personal use. He denied driving the auto the morning of June 16th and said that he had no notion as to the driver's identity. He explained that two weeks before June 16th the auto had been damaged in another accident; that at his request his brother-in-law, Victor Taglia, had taken the car to a friend named Richard Edwards, who was a used car dealer; that Edwards turned the auto over to someone else to be repaired, and that the next time he saw it was after June 16th. He said that this was the only time a car owned by Morand Brothers had been repaired through Edwards; that this was done after he had made out a report of the accident for Morand's insurance company; that the agent of the insurance company gave him permission to have the car repaired by Edwards; that he chose Edwards because of the high quality of his repair work and his cheaper price, and that he thought he would thus save money for the insurance company.

Taglia testified that he received the auto from Romano, turned it over to Edwards who operated a used car lot

and repaired automobiles, and that he did not see it again until after the 16th of June.

In rebuttal, the plaintiff called the claims manager of the insurance company to whom Romano said he had reported the accident. The claims manager stated there was no record of an accident prior to June 16, 1958, in the company's files. The plaintiff also called as a witness the claim agent who Romano testified had given him permission to have the auto repaired by Edwards. The agent said that he had no recollection of an accident being reported by Morand Brothers before June 16th and that his records did not contain a report of such an accident.

In order for the owner of a motor vehicle to be held liable for the negligent operation of the vehicle by another it must be shown that the relationship of principal and agent existed between the owner and the driver at the time of the negligent operation. Once ownership is established, a presumption or inference arises that the vehicle was being operated by the owner's agent and a prima facie case for recovery has been made. Robinson v. Workman, 9 Ill2d 420, 137 NE2d 804 (1956); Watt v. Yellow Cab Co., 347 Ill App 307, 106 NE2d 760 (1952). The presumption is rebuttable and shifts the burden of going forward with the evidence to meet the presumption upon the owner. McElroy v. Force, 38 Ill2d 528, 232 NE2d 708 (1967). If evidence is introduced to show nonagency the presumption may be dispelled. If the presumption is overcome, the overall burden of proving agency remains with the party who asserted it. Brill v. Davajon, 51 Ill App2d 445, 201 NE2d 253 (1964). The weight to be given the presumption, whether it has been overcome, and whether agency has been proved are, ordinarily, questions for the trier of fact.

The defendant admits that, because of the presumption, the plaintiff made out a prima facie case of agency but argues that the presumption disappeared when its witnesses testified; that after Romano explained the cir-

cumstances surrounding his nonpossession and control of the auto it became incumbent upon the plaintiff to prove that the driver of the auto was an agent of the defendant, and since the plaintiff did not do so, this essential element of his cause of action was lacking and a verdict should have been directed against him.

In support of this contention the defendant refers to the language of Paulsen v. Cochfield, 278 Ill App 596 (1935), wherein it was stated:

> "The testimony of one uncontradicted and unimpeached witness tending to overcome a prima facie case cannot be ignored by the court or jury, unless such testimony from its nature is not credible. . . . A prima facie case, based solely on an inference, or presumption, does not preclude the withdrawal of the case from the jury after all the evidence has been submitted."

In relying upon this language the defendant has assumed that Romano's testimony was uncontradicted and unimpeached. However, such was not the case. The credibility of his testimony was first brought into question when he stated that a record had been made of the damage the auto received in the prior accident, but was unable to produce it at the trial. He then said that he did not remember whether or not a record was kept. His testimony that he reported this accident to Morand's insurance company and that he spoke to its agent about repairing the auto was contradicted. He also said that the color of the auto which was involved in the prior accident was a two-tone blue. A police officer testified that the auto which ran into Horst was green. Romano also testified that he asked Edwards who was going to repair the auto; at a depositon he stated that he had not asked Edwards about the repairman. Although Edwards had died before the trial, no one who may have been associated with him or engaged by him to repair the auto

76

was called as a witness. No explanation was offered as to the existence or nonexistence of a repair bill, or of records pertaining to the auto which may have been made by Edwards or the repairman while the auto was purportedly in their possession.

■■ All this removed Romano's testimony from a category which might be considered unimpeached as a matter of law. His credibility was for the jury to decide and whether his testimony overcame the presumption of agency was also a jury question. The defendant's motion for a directed verdict was properly denied.

■ The verdict rests entirely upon the presumption of agency, but it was contrary to the manifest weight of the evidence only if the defendant's testimony is accepted as true. The defendant presented testimony which completely rebutted the presumption. However, evidence contradictory to this testimony cast doubt upon its truthfulness and suggested the possibility that the defendant's auto was not being repaired because of an accident which had taken place prior to June 16, 1958. If the jurors disbelieved Romano and his brother-in-law, as they obviously did, there was no explanation why the auto was not in the defendant's possession and under its control at the time it ran into the plaintiff—and the presumption, therefore, remained in force. Jurors are the sole judges of the credibility of witnesses and the weight to be given their testimony. Jeffrey v. Chicago Transit Authority, 37 Ill App2d 327, 185 NE2d 384 (1962). In view of the impeaching evidence presented by the plaintiff it cannot be said that the verdict is contrary to the manifest weight of the evidence.

■ The defendant complains that the trial court erred in admitting evidence that it was insured. It accuses the plaintiff of deliberately injecting this subject and of relentlessly pursuing it with the purpose of discrediting Romano in the eyes of the jury. Not only did the defendant's general manager initially volunteer the

information that it had insurance (the record discloses that Romano mentioned his insurance company three times before the cross-examiner questioned him about his report to the company and his conversation with its agent) but the cross-examination itself was completely proper. One of the volunteered statements by Romano was that he had reported the earlier accident to his insurance company. Left unchallenged, this statement would have bolstered his assertion that there had been a previous accident and that he did not have possession or control of the auto on the morning the plaintiff was injured. The cross-examiner delved into his professed report and in doing so laid the foundation for his impeachment. The foundation and the subsequent impeaching testimony were relevant to a material issue and as such were proper. Evidence that a defendant is covered by insurance is generally inadmissible in a personal injury action because it is irrelevant to the question of negligence. Wiersema v. Lockwood & Strickland Co., 147 Ill App 33 (1909). However, if the fact that the defendant has insurance becomes relevant to another material issue in the case it need not be excluded. Cf. Vacker v. Yeager, 151 Ill App 144 (1909); Seyferlich v. Maxwell, 28 Ill App2d 469, 171 NE2d 806 (1961). Evidence otherwise inadmissible may be received for impeachment purposes (Eizerman v. Behn, 9 Ill App2d 263, 132 NE2d 788 (1956)) and this may be done even if the admitted evidence reveals or elaborates upon the defendant's insurance coverage.

The defendant also complains about two instructions which were given at the plaintiff's request. One of these was on the presumption of agency and was adapted from Illinois Pattern Jury Instructions No. 50.07. The instruction stated that if the jury decided that the auto was owned by the defendant it could infer that the driver was acting as the agent of the owner, unless it found that the inference was overcome by other believable evi-

dence. The defendant's argument appears to be that the presumption had vanished because believable evidence had been introduced to overcome it. This contention has been discussed and decided adversely to the defendant. The instruction was correct and the court did not err in giving it.

█ The second instruction is another matter. It told the jury that the defendant had to prove that the automobile was not driven by its agent. This was an incorrect statement of law. As we have seen, proof of the defendant's ownership raised a presumption of agency and the burden of going forward with the evidence thereupon shifted to the defendant. The defendant's burden was to offset the presumption; it was not to disprove agency. The overall burden of proving agency remained with the plaintiff. Brill v. Davajon, supra.

It was error to give this instruction but the error was induced by the defendant. To place the error in its proper perspective it is necessary to resort to the pleadings which gave rise to it. The complaint contained the following allegation:

> "4. That at the time and place aforesaid, the defendant, and each of them, individually, or by and through their agents, servants or employees, acting in their behalf, owned, operated, maintained, controlled, and were in the possession of a certain motor vehicle then and there being operated in an easterly direction on the aforesaid 39th Street."

The defendant answered the above allegation as follows:

> "4. This defendant admits that it owned one of the automobiles involved herein but denies all the remaining allegations of paragraph 4."

The defendant was not content with this denial. It went further and in paragraph 10 of its answer stated:

79

"10. As a further defense this defendant states that at the time of the accident involved herein its automobile was not being operated, driven or controlled by any employee, agent or servant of this defendant nor was it being operated by any one with the knowledge or consent of this defendant."

The plaintiff filed a reply to this affirmative defense.

 There was no reason for the defendant to plead an affirmative defense. The criteria to be applied in determining if a defense is or is not of an affirmative nature is whether, by the raising of it, a defendant gives color to his opponent's claim and then asserts new matter by which the apparent right is defeated. Cunningham v. City of Sullivan, 15 Ill App2d 561, 147 NE2d 200 (1958). If a particular issue is raised by denial, there is no need to assert it as an affirmative defense. The defendant had already denied agency in paragraph four of its answer. Issue was thus joined on this question. Paragraph ten added nothing. It admitted no apparent right and interjected no new matter which would have the effect of defeating the plaintiff's allegation.

The defendant's initial mistake was compounded by an instruction. At the conference on instructions the defendant objected to the plaintiff's instruction on the issues and submitted its own which the court accepted. In part it was as follows:

"The defendant also sets up the following affirmative defense:

"The defendant denies that at the time of the accident involved herein, its automobile was being operated, driven, or controlled by any employee, agent or servant of the defendant, nor was it being operated by anyone with the knowledge or consent of the defendant."

80

 The burden of proving an affirmative defense is upon the party asserting it. Krueger v. Dorr, 22 Ill App2d 513, 161 NE2d 433 (1959). In accordance with this rule the court gave the jury the plaintiff's burden of proof instructions which stated, in part:

> "In this case defendant has asserted the affirmative defense that its motor vehicle was not being driven by any agent of the defendant. The defendant has the burden of proving this defense."

The giving of this instruction was error, but it was error brought about by the defendant's injection of the affirmative defense into the case in its answer and the repetition of it in its instruction. A party cannot object to an instruction which it has invited, nor can it complain of an erroneous instruction caused by its improper pleading in the first instance. McNealy v. Illinois Cent. Ry. Co., 43 Ill App2d 460, 193 NE2d 879 (1963).

 The defendant's final contention is that the verdict was the result of prejudicial argument. Only one allegedly prejudicial comment of the plaintiff's counsel was included in the defendant's post-trial motion. The other comments complained of are therefore waived. Hoff v. Yellow Cab Co., 53 Ill App2d 333, 203 NE2d 8 (1964); Richichi v. City of Chicago, 49 Ill App2d 320, 199 NE2d 652 (1964).

 In his closing argument the plaintiff's attorney asked the jury to look kindly upon the plaintiff. The defendant's objection was sustained. The attorney then told the jury that the plaintiff was not looking for sympathy and that he was not entitled to it. The court's ruling and the attorney's apologetical retraction removed any prejudice that could possibly be attributed to his original statement.

 The plaintiff testified that his medical expenses, lost wages and the loss he suffered by having to relin-

81

quish his investment in a delicatessen store totaled $5,834.75. His testimony as to damages was uncontroverted. In light of these damages the jury's verdict was not excessive.

The judgment is affirmed.

Affirmed.

SCHWARTZ and SULLIVAN, JJ., concur.