**State Farm Mutual Automobile Insurance Company, Plaintiff-Appellee, v. Paulette Short, Donald McLean, as Administrator of the Estate of Robert Moss, and Courtie La Franklin (Lee) Moss, Defendants, Paulette Short, Appellant.**

Gen. No. 68-123.

Fifth District.

June 22, 1970.

Mills, J., dissenting.

Richard A. Cagle, of Alton, for appellant.

James L. Reed, Reed, Armstrong and Gorman, of Edwardsville, for appellee.

MORAN, P. J.

Paulette Short appeals from a summary judgment entered by the trial court of Madison County in favor of the plaintiff, State Farm Mutual Automobile Insurance Company.

Courtie La Franklin (Lee) Moss, hereinafter referred to as Lee Moss, the named insured in plaintiff's liability insurance policy, was the father of Robert Moss who was driving a car owned by his brother, Loren, when it collided with a car driven by the defendant, Paulette

Short. Robert Moss was killed in the accident and Paulette Short was injured.

Paulette Short filed suit against the Administrator of Robert's estate and State Farm Mutual Automobile Insurance Company then filed suit against Paulette Short, Lee Moss and the Administrator of the Estate of Robert Moss, seeking a judicial determination that its insurance policy issued to Lee Moss did not furnish coverage to Robert Moss on the date of the accident.

The insuring agreement with respect to non-owned automobiles provided that liability coverage was afforded to any person using the non-owned automobile (which in the case at bar was Robert Moss) if said person was a "resident of the same household" as the named insured, and "provided such use . . . is with the permission of the owner or person having lawful possession of such automobile." Plaintiff's motion for summary judgment claimed that there was no genuine issue of fact as to whether or not Robert Moss was a resident of the same household as that of his father, Lee Moss, at and before the time of the accident in question and even if he were a resident of the same household, he was driving the car involved in the accident without the permission of the owner.

Plaintiff attached to its motion excerpts from the depositions of Lee Moss, Ruth Moss, his wife and the mother of Robert, and Catherine Arnold, a sister of Robert, all of whom testified that Robert Moss was not a resident of the household of Lee Moss at and prior to the accident, and also excerpts from the depositions of Loren Moss and Diana Moss, his wife, who testified that Robert Moss had never driven the car before the night of the accident in question to the knowledge or with the permission of either of them and was driving the car on the night of the accident without their permission.

The defendant, Paulette Short, filed several affidavits in opposition to plaintiff's motion for summary judgment

for the purpose of showing that Robert Moss was a resident of the household of Lee Moss at and prior to the time of the accident and that he was driving Loren's car with his express or implied permission on the night of the fatal accident.

The trial court in granting plaintiff's motion held that the counteraffidavits filed by defendant, Paulette Short, were worthless in that they failed to comply with Supreme Court Rule 191 because they consisted of conclusions, hearsay and inadmissible inferences. Supreme Court Rule 191 provides:

> (a) Requirements. Affidavits in support of and in opposition to a motion for summary judgment and affidavits under section 48 of the Civil Practice Act shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. If all the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used.

We first consider whether there was a genuine issue of fact as to whether or not Robert Moss was a resident of the same household as that of his father, Lee Moss at and before the time of the accident in question.

One of the affidavits filed by defendant to prove Robert Moss resided in the household of Lee Moss was made by Kenneth and Queenie Herron which reads as follows:

> "Our names are Kenneth and Queenie Herron, husband and wife, Bethalto, Illinois.

"We are adults and until May 23, 1966 we lived on First Street, Forrest Homes Addition to Cottage Hills, Illinois. When at that address, we lived on the next street from Lee Moss, our house was about one block north and one-half block west of Lee Moss' house.

"I, Kenneth Herron, worked under Lee Moss when he was foreman of a labor crew on the Illinois State Highway Department. We both knew the family well.

"We moved out to our present address on May 23, 1966. The reason we know the date is because it is the birthday of our son, Charles Edward Herron.

"Robert Moss was not married and lived at home with his parents, Mr. and Mrs. Lee Moss, on Lee Avenue, Cottage Hills, Illinois. He was in service and was away from home from time to time but we never knew of him living any place besides with his parents when he was in this area.

"We knew Robert off and on for several years and saw him coming and going from Lee's house on several occasions the last two or three months that we lived on First Street in Cottage Hills.

"The facts stated herein are to our personal knowledge and we can testify competently thereto if called as witnesses."

Prior to the ruling on the motion for summary judgment, plaintiff filed a motion to strike from this affidavit the following language: "lived at home with his parents, Mr. and Mrs. Lee Moss, on Lee Avenue, Cottage Hills, Illinois," and also the words, "we never knew of him living any place besides with his parents when he was in the area." Plaintiff's motion was granted by the trial court on the basis that the Herron affidavit conflicted with Rule 191 in that it contained conclusions without supporting facts. Other affidavits similar to the Herron affi-

davits were filed by defendant, Paulette Short, and like rulings on them were made by the trial court. In Rost v. Noble & Co., 316 Ill 357, at 364, 147 NE 258 our Supreme Court said:

"The right of a witness to express his opinion upon a non-technical subject, based upon facts which he has observed, when it is impossible by word of mouth or gesture to reproduce the data before the jury so that they may as intelligently as the witness draw an inference therefrom upon the subject, has been sustained in many cases."

██ Generally, the nonexpert witness may not give his opinions or conclusions, but must confine his testimony to a report of facts. However, it is well-established that when it is not practicable to place before the jury all the primary facts in such a way as to enable the jury to form an intelligent conclusion, witnesses who have had means of personal observation may state their opinions and conclusions, formed from such facts and circumstances as come under their observation. The ground upon which such opinions are held to be admissible is the impossibility or difficulty of reproducing the data observed by the witnesses. When the subject matter relates to subtle or complex facts perceived by the senses, to a series of instances passing under the observation of witnesses, or to a great variety of circumstances and a combination of appearances which are too indefinite and general in their nature to be susceptible of direct proof, or which, by reason of the limitations of language, cannot be adequately described and presented to the jury with the same force and clearness as they appeared to the witness, he may state his impressions and opinions based upon the facts and circumstances observed by him or the effect which they produced upon his mind. 31 Am Jur2d 508–509. So where a person lives close to another family

and where he has been intimately acquainted with that family for a long period of time, it seems illogical to hold that he cannot say that he knows that one of the children of the family resided with the father and mother.

██ ██ With reference to subjects on which opinions are usually formed without analyzing the reason for them or noticing their elements and where the witness is qualified to express such an opinion by reason of his special knowledge or familiarity with the matter in question, he will be permitted to give his conclusion. This reasoning would apply in a situation where a friend and neighbor of a person is asked where another friend and neighbor resides. He would know that his friend lives across the street because he has special knowledge on this subject, but would not have paid particular attention to the various elements in his relationship with his neighbor which enabled him to form an opinion concerning his residence.

Rule 211 in Gard on Evidence reads:

> "If the witness is not testifying as an expert, his testimony in the form of opinion or inference is admissible only where the facts upon which the opinion or inference is based cannot be ascertained and made intelligible to the jury, or where the opinion is of a condition which cannot be reproduced by description."

In commenting, Gard states that the rule is at best only a guide and that the rule in practice should be most flexible. He gives the following illustration:

> "Suppose, for instance, that the witness says that he saw John Jones on the street. No court would reject his testimony on the ground that it is opinion, but, of course, it is just that. To require a minute description of the real John Jones and then to re-

quire the witness to describe the man whom he saw in order that the jury could form the opinion as to whether the man was John Jones or not, would be complete nonsense. And so it is with many of the objections to opinion testimony as experience will demonstrate."

Wigmore's treatise on evidence contains an exhaustive discussion of the history, theory and application of this rule. He calls for its abolishment and gives the following reference:

"In 1937–38 this subject was one of twenty placed on the program of the American Bar Association's Committee on the Improvement of the Law of Evidence; the Committee's personnel consisted of five members (three being judges), some sixty-five advisory members (one from each State and Territory, and fifteen at large, these being chiefly professors of law of Evidence), thus providing a veritable cross-section of professional opinion. The relevant part of their Report is as follows:

"The Opinion Rule is the rule prohibiting a qualified lay witness from stating the inference drawn by him from something he has seen (e. g., whether a sidewalk hole was dangerous, a signal-light could have been observed, etc.), and also prohibits even an expert witness from stating his opinion in certain cases (e. g. as to cause, direction, possession, etc., etc.)

"This rule is probably the most frequently invoked rule in the whole list of Evidence rules. Many persons have come to the belief that its technicalities as used today are an obstruction to the investigation of facts, and that its benefit if any is negligible. Judge Learned Hand has publicly said: 'No rule is subject to greater

abuse. It is frequently an obstacle to any intelligible account of what happens. . . . I know of none more baffling to a witness. . . . Whatever its logical justification, it is the most annoying rule in its application that I know.' U. S. v. Cotter, 1932, 60 F2d 689; Lectures on Legal Topics, NY 1926, p 97). In 1934 the New York Commission on the Administration of Justice recommended the rule's abandonment in the following terms: 'It is proposed that ordinary witnesses may state their conclusions with respect to ordinary matters subject to explanation, thus permitting a witness to state his observation in a natural and non-technical manner.'

"We recommend that the measure proposed by the New York Commission be enacted. (Vote of the Committee: In favor, 43; opposed, 6.)" Wigmore on Evidence, Vol VII, Par 1929, pp 26–29.

Furthermore, residence is primarily a question of intent and summary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions. A judge may not, on a motion for summary judgment, draw fact inferences. Such inferences may be drawn only on a trial. Cross v. United States, 336 F2d 431, 433; Empire Electronics Co. v. United States, 311 F2d 175, 180.

In our opinion, the trial court erred in striking the language in question from the Herron affidavit and in striking similar language from other like affidavits filed by the defendant.

We next consider whether there was a genuine issue of fact as to whether or not Robert Moss was driving the car in question with the express or implied permission of the owner at the time of the fatal accident.

■ Defendant also secured affidavits from several witnesses, some of whom averred that they heard Loren Moss say that his brother was driving the car with his permission on the night of the fatal accident. Counsel for the plaintiff contended in the trial court and contends in this court that their statements are incompetent as admissions because Loren is not a party to this litigation and that they are inadmissible as hearsay. Assuming the correctness of plaintiff's contention the affidavits were admissible for impeachment purposes.

■ Since it is admitted that Loren Moss was the owner of the car, it is presumed Robert was the employee or agent of Loren operating in the scope and authority of his employment or agency. See Civil IPI Instruction 50.07; Paulsen v. Cochfield, 278 Ill App 596; Horst v. Morand Brothers Beverage Co., 96 Ill App2d 68, 237 NE 2d 732; McElroy v. Force, 38 Ill2d 528, 232 NE2d 708. This presumption is overcome by Loren's deposition in which he testified that Robert did not have his permission to drive the car on the night in question or at any other time. McElroy v. Force, supra. However, Loren's deposition testimony is met by the affidavits of several people who swore that Loren told them that he had given Robert permission to drive the car. Clearly these affidavits are admissible to impeach Loren's testimony and the question of Loren's credibility is raised. Under these circumstances summary judgment is inappropriate. Cross v. United States, supra, Arnstein v. Porter, 154 F2d 464. Courts cannot overestimate the importance of having the witness examined and cross-examined before the court and jury.

There was also an affidavit that both Loren and Robert drove the car "about the same amount," and purported admissions by Lee Moss that Robert resided in his home at and before the time of the accident.

In Harp v. Gulf, Mobile & Ohio Railroad Company, 66 Ill App2d 33, 213 NE2d 632, this court said:

"The purpose of summary judgment proceedings is to determine whether there is any genuine triable issue of fact which must be passed upon. Gribben v. Interstate Motor Freight System Co., 18 Ill App2d 96, 151 NE2d 443. If the pleadings, discovery depositions and exhibits, present a genuine issue as to any material fact, summary judgment should not be granted. Halloran v. Belt Ry. Co. of Chicago, 25 Ill App2d 114, 166 NE2d 98. The right of the moving party to summary judgment must be free from doubt. Miller v. Owens-Illinois Glass Co., 48 Ill App 2d 412, 199 NE2d 300. The affidavits filed in support of a motion for summary judgment will be strictly construed and must leave no question of the movant's right to judgment, but the affidavits filed in opposition thereto will be liberally construed. Tansey v. Robinson, 24 Ill App2d 227, 164 NE2d 272."

For the foregoing reasons the judgment of the trial court of Madison County is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded for trial.

EBERSPACHER, J., concurs.

MILLS, J., dissenting:
Flimsy and puerile cases, like frivolous and hollow appeals, should be similarly treated: Summarily, and with dispatch.

Summary Judgment was, in my opinion, the proper medium for the disposition of this matter and the trial court should be affirmed. The majority of this Court concludes that the test for summary judgment has not been met. I must respectfully disagree. The standard or

108

criterion has been tersely stated: "The pleadings and affidavits in the case should show, when construed most favorably against the moving party, that there is *no genuine issue as to any material fact* and that the moving party is entitled to the decree or order as a matter of law." Glen View Club v. Becker, 113 Ill App2d 127, 251 NE2d 778, 782. (The visceral portion of the test has been purposely stressed.)

The Civil Practice Act of Illinois, Sec 57, sets forth summary judgment procedure and provides that affidavits shall be governed by rule. Pursuant to that statutory authority, the mandatory edict of Illinois Supreme Court Rule 191 is unequivocal in its language: "Affidavits in support of and in opposition to a motion for summary judgment . . . shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; . . . shall not consist of conclusions but of facts admissible in evidence. . . ." The mere filing of an affidavit raises no issue of fact (In re Estate of Boysen, 73 Ill App2d 197, 218 NE2d 838, 839), and the recitation of mere conclusions does not satisfy the requirements of the Supreme Court Rule (Prudential Insurance Company of America v. Zorger, 86 F2d 446, 449).

The majority of this court relies primarily upon the affidavit of the Herrons and "other affidavits similar to the Herron affidavits" in support of their holding. I agree that a careful examination of all of these counter-affidavits in opposition to the motion for summary judgment are similar and fall in the same category as the Herron affidavit. And I further agree with the majority that such affidavits state the *conclusion* that Robert Moss "lived at home with his parents." The counter-affidavits unquestionably consisted of pure and undiluted conclusion, recited no facts based on personal knowl-

edge from which such conclusions could be deduced and frequently amounted to nothing more than the rankest form of hearsay.

The mandatory requirements of Rule 191 are crystal clear and do not equivocate in the slightest: The affidavits must "set forth with particularity the facts" and "shall not consist of conclusions but of facts admissible in evidence. . . ." My interpretation of Rule 191 and the long line of Illinois decisions on summary judgment leads to but one result: Conclusions are simply not sufficient, and our courts have consistently held that the affidavits, both in support of and contra to summary judgment, must relate the *facts* from which those conclusions can be drawn. Were this not the rule, summary judgment could never stand and such procedure would be non-existent. If we are to permit the mere recitation of conclusions in such affidavits, all that an opposing party litigant need do is recite as a conclusion the very opposite of what the summary judgment motion asserts— no facts, no specifics—simply a naked and unadorned contrary statement of conclusion.

The majority would, however, seek to circumvent such requirement for *facts* and permit the *conclusions* to stand in opposition to the motion for summary judgment on the paper-thin reasoning that the matter at bar is "a non-technical subject" as treated in Rost v. Noble & Co., 316 Ill 357, 364, 147 NE 258. I do not quarrel with that doctrine, but I am unable to see even a shadow of its applicability to this appeal. The exception of permitting "a witness to express his opinion upon a non-technical subject . . . when it is impossible by word of mouth or gesture to reproduce the data before the jury . . ." is a far different cry from our problem: there is no jury here; there is no suspicion that to require facts from an affiant are "impossible" here; there is no hint that the facts here supporting the conclusion cannot be re-

produced; there is no suggestion that such facts are incapable of being conveyed "by word of mouth or gesture." Granted, opinion or conclusion is not always "practicable to place before the jury" and "subtle or complex facts perceived by the senses," or "a combination of appearances which are too indefinite and general in their nature to be susceptible of direct proof," or due to "limitations of language," "cannot be adequately described and presented to the jury." All well and good, but how is it relevant here? None of these difficulties in communication are hinted at in this case. This was not a question of a lay jury having difficulty understanding "subtle or complex facts." It was a simple question of whether the affiants stated bald conclusions or the normal mundane facts of common observance upon which the conclusions were grounded. Assuming, arguendo, that the facts in the case at bar were so "subtle or complex" as to be uncommunicative to a jury, there would appear to be utterly no excuse why the facts could not be set forth in writing in an affidavit where all of the subtleties, accuracies and leisure of draftsmanship could paint a clear picture with a factual brush. It seems axiomatic that the counter-affiants could have related what they saw or observed Robert Moss doing at, in or around his parents' home— *facts*. In short: there is nothing at all here to indicate that what the affiants saw defies description.

I, too, agree with the truism that the examination and cross-examination of witnesses before a court and jury is most important. That is why the test for summary judgment is as precise, exact and rigid as it is. But where there is "no genuine issue as to any material fact" the efficacy of summary judgment is most assuredly sound. And the time-honored method of measuring a given case for summary judgment is by affidavit, and affidavits must contain facts, not conclusions. By my yardstick, appellant's counteraffidavits were wholly conclusionary,

111

totally lacking in proper composition and requisite recital of facts, directly violative of Rule 191 and because of their inadequacies leave an absolute void in an ill-starred attempt to counter the affidavits in support of summary judgment.

Now, we turn to the taproot of this appeal: Was Robert Moss a resident of his father's household *and* was he also driving his brother's car with permission at the time of the collision? Both parties to this review agree that if either segment of this two-pronged question is answered in the negative, then Robert Moss was not covered by the insurance policy in question. We must then examine the affidavits in support of the motion for summary judgment and scrutinize them under the same hard, bright light of the tests applied to the counter-affidavits. These affiants were the father, mother, brother, sister and sister-in-law of the decedent, Robert Moss. Their affidavits consisted of a myriad of facts, not conclusions; and they are not at variance in the essential and material elements here scrutinized, but rather all fall into basically the same fundamental factual pattern:

Robert Moss was discharged from the Navy in 1959 in California. He returned to Illinois and stayed until 1961 when he returned to California to work for an uncle. After 2 or 3 months, he came back to Illinois where he worked for various employers. He didn't hold a job very long. Over the next several years he went back and forth between California and Illinois. In January, 1966, he went to Florida to pick grapefruit and returned to Illinois the next month. From February 3, 1966, until his death on May 23, 1966, he was in the Cottage Hills area. Robert Moss was never married, and in the words of his mother he was "a wanderer." He would work for a few weeks and then leave; his family had a difficult time keeping track of him. He would stay with either his

112

parents or a brother or a sister—a few nights at a time, or maybe one night—and then somewhere else. He rarely sat down to a meal at any of their homes—and never regularly. He would eat a sandwich now and then at the home most convenient. He had articles of clothing at all of their homes, and they all did some of his laundry along with their own. He left a suitcase with some personal items in it at his brother's home. He paid no board, and never paid any of them for doing his small amount of laundry. He stayed at all of their homes, moving from one to another. His mother stated that he had not slept at their house since February 3, 1966, except the night before his death.

As is germane to this review, the phrase "residents of the same household" must be construed. Was Robert a "resident" of the same "household" as his father, the insured? No Illinois authority relevant to this interpretation has been called to our attention. Consequently, it is necessary to turn to other sources. Black's Law Dictionary, Revised Fourth Edition (1968), defines "household" as "A family living together. . . . Those who dwell under the same roof and compose a family." And Black's defines "residence" as "A factual place of abode. Living in a particular locality. . . . It requires only bodily presence as an inhabitant of a place." And from a brief scanning of the many cases in 37 Words and Phrases under "Resident," it becomes apparent that the context of the use of "resident" is extremely important since its meaning varies with purpose and context.

In State Farm Mutual Automobile Insurance Company v. Walker, 78 ALR2d 1395, 334 SW2d 458, 462–463, the Court of Civil Appeals of Texas said: "We believe . . . that the term 'resident' should be construed to mean 'member,' or 'member of the same family.' As applied to a 'family,' a person is either a member of it or is not a member of it, for it is a personal relationship. It would

not be possible to be a 'resident' of a family. It is possible to reside in or be a 'resident' 'in a house,' but not 'of a house.' One may be a 'member' of a family or organization or group, but not of a building or of anything inanimate."

Hartford Accident & Indemnity Company v. Casualty Underwriters, Inc., 130 F Supp 56, held that a son's temporary one or two day visits with his father were insufficient to classify the son as a member of his father's household, and cited numerous cases to show that "The courts have constantly stressed the common 'living under one roof' as a signal characteristic of a household." (P 58.)

The fact that all those living under the same roof in the same household contributed to the expenses of the home has been considered an important element. That factual situation was accented in defining "an adult member of the household" in Andrews v. Commercial Casualty Insurance Co., 128 Neb 496, 259 NW 653, 655. In an Oklahoma case, Indemnity Insurance Co. of North America v. Sanders, (Okla), 36 P2d 271, 273, that court viewed the word "household" as nearly synonymous with "family." In the interpretation and construction of the phrase "an adult member of the assured's household" in an insurance policy, the court emphasized that the head of the household had no liability to support his daughter or son-in-law, and that they in turn owed no duty to him to "abide the authority" of the father.

A situation somewhat analogous to the factual background in the case on review is found in American Casualty Company of Reading, Pennsylvania v. Crook, 197 F Supp 345, affirmed in 301 F2d 846. The question was whether or not a brother-in-law was "resident" of insured's household. The brother-in-law ". . . had been divorced for several years and since his divorce has led a somewhat nomadic pattern of life. He has lived or visited

from time to time with members of his family, or has stayed in hotels or rooming houses . . . traveled to and from work with other parties . . . went to Florida . . . and worked on various construction projects . . . returned to West Virginia . . . resided with the Lilly family . . . and . . . stayed a short time with his mother . . . three or four days prior . . . he arrived at the Crook's home . . . he brought some of his belongings into the house, slept in one of the rooms with other members of the family, ate his meals with the family and to a large degree participated in their social and family activities. He paid no room or board on this occasion . . ." (p 348). The court determined that he was not a "resident" of the insured's household.

I conclude that the cases here alluded to correctly reflect the better and majority view. Residence in a household contemplates a family unit relationship, where all members dwell under a common roof and shelter, contribute in manifold ways to the welfare of all members of that family unit and submit to the authority and influence of the head or leader of that domicile. Decedent fulfilled none of these requisites. Taken in their most favorable light from appellant's viewpoint, the facts are manifestly clear in demonstrating that decedent's was a pastoral and migratory existence, going where the mood directed, staying under the most convenient roof, resting on the nearest berth and partaking of the most available sustenance. Where his residence was is not at issue; the fact that it was not with his father is.

Since the first segment of the inquiry must be answered in the negative, and Robert Moss was not a resident of his father's household at the time of the collision, appellant's entire suit topples and she has no cause of action under the insurance policy here. To my view, the trial court correctly ruled in granting summary judgment, and its action should be affirmed.