Andrew Rost, Admr., Defendant in Error, *vs.* F. H. Noble & Co. Plaintiff in Error.

*Opinion filed February 17, 1925—Rehearing denied April 21, 1925.*

1. Evidence—*what is not sufficient to prove the injury occurred within the State—judicial notice.* In an action for death due to wrongful act, the material averment that the wrongful act occurred in Chicago, Illinois, is not proved by testimony that the factory where the wrongful act and injury occurred was located at Fifty-ninth and Wallace streets, without any direct evidence that such location is in Chicago or in Illinois, as the court cannot take judicial notice that said streets are in the city of Chicago.

2. Same—*when a witness should be permitted to state what he could see from a certain position.* Where the situation cannot be so produced by the evidence as to enable the jurors to determine for themselves whether a certain witness could see what he testified he saw from a certain position, another witness who is familiar with the locality and with the obstructions to the vision should be permitted, after detailing a description of the circumstances and objects, to testify whether a person standing where the former witness testified he stood could see what he testified he saw, as such evidence is not opinion evidence but the statement of a fact.

3. Same—*when criminal offense involved in civil suit may be proved by preponderance of evidence.* The rule that when a criminal offense must be established in a civil suit in order to maintain the cause of action or defense the proof must remove every reasonable doubt of guilt is limited to offenses which are felonies, and as to other offenses a preponderance of the evidence is sufficient.

4. Trial—*when a verdict will be set aside because of improper argument.* Where counsel for the plaintiff argues improper evidence to the jury the same as if it had been admitted in evidence, and does so over repeated objections, which are sustained, such abuse of the right of argument justifies the setting aside of a verdict for the plaintiff, where the argument, and the improper evidence on which it is based, are of a character to prejudice the jury against the defendant.

5. Child labor—*what will sustain an action for wrongful death arising out of unlawful employment of child.* Where the basis of an action for wrongful death is the alleged violation of the Child Labor law in the employment of the plaintiff's intestate, it is sufficient to prove that the deceased was unlawfully employed and was injured while engaged in doing any of the work mentioned in the declaration, and there is no variance where it is not proved that the deceased was doing all the things alleged or that he was specifically ordered to do what he was doing.

6. Same—*instruction should not quote portions of statute which are not applicable.* In an action based on an alleged violation of the Child Labor law it is error to give an instruction quoting many sections of the law, only a small part of which has anything to do with the issues in the case.

7. Same—*what instruction is not proper in an action for injury arising out of unlawful employment.* In an action for wrongful death from an injury arising out of an employment in violation of the Child Labor law, it is error for an instruction to direct a verdict for the plaintiff if the jury believe from the evidence that the deceased was under the age of sixteen years, that he was injured and was at the time working for the defendant, without requiring any finding that the injury was the result of the employment.

8. Same—*violation of Child Labor law need not be proved beyond reasonable doubt.* In an action for wrongful death, based on an alleged violation of the Child Labor law, though the foundation of the action is the unlawful employment, for which the statute imposes a penalty, the plaintiff is not required to establish his case beyond a reasonable doubt but only by a preponderance of the evidence.

9. Same—*rules of negligence do not apply to action based on violation of Child Labor law.* Rules of negligence, contributory

negligence and assumed risk have no application to an action by a child, or by his administrator, for an injury or death received by reason of his employment by the defendant in violation of the Child Labor law, as the action is statutory and is based on a wrongful act, of which negligence is not an element.

10. SAME—*when the question of the parents' violation of the Child Labor law does not arise.*  In an action against an employer for an injury and death arising out of the alleged unlawful employment of a child in violation of the Child Labor law, the question whether the parents likewise violated the law in permitting their child to be employed in the work in which he was engaged is not presented, where there is no evidence that the parents knew what kind of work the child was doing and no instruction is asked as to the effect on the case of the parents' violation of the law by permitting the unlawful employment of the child.

11. DAMAGES—*when only nominal damages should be allowed a brother.*  In an action by an administrator for wrongful death, based on alleged violation of the Child Labor law, the law presumes substantial injury to the parents, but the damages to collateral kindred are only such actual damages as are proved; and where the parents are living and there is no proof of actual damages to a fourteen-year-old brother, the defendant is entitled to an instruction that only nominal damages can be awarded on account of the loss to the brother.

12. NEGLIGENCE—*when doctrine of contributory negligence does not apply.*  The defense of contributory negligence does not apply to injuries willfully or intentionally inflicted, nor does it apply to such causes of action as result from the commission of a crime, as everyone has a right to assume that no one will commit a crime, and one's civil rights against an offender do not depend upon the care which he exercises to anticipate and prevent a crime by which he suffers loss.

WRIT OF ERROR to the First Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

ROBERT F. KOLB, for plaintiff in error.

FERDINAND W. JAROS, and CHARLES C. SPENCER, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Andrew Rost, as administrator of the estate of Joseph Zembrzuski, recovered a judgment for $3000 against F. H. Noble & Co. in an action on the case in the circuit court of Cook county for damages for the death of his intestate, which the Appellate Court affirmed, and the record is brought before us for review by a writ of *certiorari* awarded on the petition of the defendant in the trial court.

The declaration in two counts charged that the defendant on March 5, 1920, in Chicago, Illinois, was operating a factory, and a freight elevator operated by hand, and other machinery, viz., drilling, punching and stamping machines driven by electric power; that the deceased, who was a boy between fifteen and sixteen years old, was employed by defendant in operating a drill machine and in carrying, transferring, loading and unloading boxes filled with material of great weight and hoisting the same by the elevator; that this work was such extra-hazardous employment that it was dangerous to the deceased's life or limb, and he was then and there unlawfully employed at said work, contrary to the statute of the State; that by means of the neglect and default of the defendant, the deceased, while carrying, loading and unloading boxes to and upon the elevator, was internally injured and ruptured, whereby he got strangulated hernia, from which he died on March 23, 1920.

The errors assigned question the action of the court in the admission and rejection of evidence, the giving and refusal of instructions, the overruling of a motion for a new trial, prejudicial conduct of the plaintiff's attorney and the court, and the overruling of motions made by the defendant to strike the plaintiff's evidence on the ground of variance and to instruct the jury to find the defendant not guilty.

The evidence shows that when the deceased was three years old he had a hernia, caused by the whooping cough, which caused a protrusion as large, his mother testified, as

her fist. He was treated by a physician, under whose direction he wore a bandage and belt for about a year. When he quit wearing the belt the swelling was reduced to the size of a small potato, and he was apparently well. On January 15, 1920, he was employed by the defendant's superintendent after he had signed an application card in which he represented his age to be seventeen years. The defendant is a corporation engaged in the manufacture of jewelry, occupying for that purpose a five-story building, in which were punch presses, drill presses and lathes used in manufacturing. The deceased's duties consisted of soldering, working on a drill press, sometimes on a grinding machine, and sometimes he was sent on errands and carried boxes filled with lead pins weighing from twenty-five to thirty pounds. John Maluchnik, a fellow-worker nineteen years old, who was a neighbor, testified that on March 5, 1920, he had seen the deceased about 3:30 o'clock in the afternoon when Maluchnik went down from the fourth floor, where he was working, to the stock room, on the second floor. On entering the stock room he saw the deceased at the elevator laying down a box which appeared to be heavy. Maluchnik had eaten lunch with him at noon and at that time he was all right. Maluchnik next saw him at five o'clock, the hour of closing, when he was sitting on a chair close to the stair on the third floor, looking pale and sick. There was a time-clock there, which both Maluchnik and the deceased used. The deceased waited until the rest of the workmen had got through punching time and then punched his. He and Maluchnik then left the building together, walking slowly to the street car, and went home together, making two transfers. The deceased kept his hand in his pocket, held his side and got on the street car slowly. When he got home the deceased went to bed and his mother treated him with hot applications that night. A doctor was called the following day and found him suffering from strangulated hernia. He was taken to a hos-

pital, was operated on at once, and died from the hernia on March 23.

The statute which is the basis of the action is the Child Labor act of 1917. (Laws of 1917, p. 511.)

The first contention of the plaintiff in error is that the evidence does not show that the factory where the deceased was employed was in Chicago or in the State of Illinois. The declaration alleged that it was situated in Chicago, Illinois, and this was a material averment, for the statute gives no right of action for a death from a wrongful act occurring out of the State. (*Wall* v. *Chesapeake and Ohio Railway Co.* 290 Ill. 227.) It was therefore necessary to prove the allegation. The testimony shows that the factory was at Fifty-ninth and Wallace streets, but there is no direct evidence that it was in Chicago or in Illinois. We cannot take judicial notice that Fifty-ninth and Wallace streets is in Chicago. The defendant in error insists that there is evidence from which it may be fairly inferred that the factory was situated in Chicago, but it is unnecessary to determine this question, for since the judgment must be reversed, on a new trial the fact as to the situation of the factory can be fully shown.

Maluchnik testified that he was employed on the fourth floor of the building and on the afternoon of March 5, 1920, had to go down to the stock room, on the second floor, which was at the foot and in front of the stairs. As he entered the stock room he looked back toward the freight elevator, in the southeast corner of the building, and saw the deceased at the freight elevator laying down a box about two and a half feet long and a foot and a half wide, which appeared to be heavy; that the elevator was open and he was just outside it and laid down one end of the box at a time. The defendant's superintendent was called as a witness and described the condition of the second floor as it was at that time. He was then asked the question, "Could' a person standing at the foot of the stairway on the second

floor see the elevator in the rear?" Objection was sustained
to the question. The defendant's foreman of the soldering
department testified that the stairs were seventy-five feet
from the elevator, and that between them were tanks four
feet high, the hot air drier, the kneading oven, the pillars
that support the building, about 12x12, a fence ten or twelve
feet high, two barrels and a swedger. He was then asked
if a person could stand at the foot of the stairs on the sec-
ond floor and see a boy five feet eight inches tall standing
in front of the elevator in the rear. Objection was sus-
tained to this question. Another witness, Harry N. Delano,
the cost clerk of the defendant, after describing the condi-
tion on the second floor in detail, was asked, "Was it phys-
ically possible on March 5, 1920, for a person to stand at
the foot of the stairway and see a boy five feet eight inches
tall bend down laying a box in front of the elevator?" An
objection was made and he was not permitted to answer.

The testimony of Maluchnik was of vital importance.
Without it the plaintiff had no case. The defendant had
no witnesses who were present and therefore no way to
meet this testimony except to show that the circumstances
were such as to make it physically impossible for Maluchnik
to see what he testified he saw. The witnesses testified to
the condition of the room and to the presence of a number
of obstacles to the sight, but it could not be said, in view
of the testimony of a witness that he did see, that their
description made it impossible for him to see. The evidence
could not reproduce the situation so that the jury could
determine from it the possibility of a man at the foot of
the stairs seeing the elevator, and under such circumstances
the witness, after detailing the obstructions which existed,
should have been permitted to say whether it was possible
to see from the foot of the stairs a man standing at the
elevator. In *Hauser* v. *People,* 210 Ill. 253, the prosecut-
ing witness, Edmundson, based his identification of the de-
fendants largely upon the view he obtained of them while

they were entering the door of the engine house and were overpowering him there. He described the engine house, the lights and his position. It was contended, and proof was introduced tending to show, that Edmundson could have had but an imperfect and indistinct view of the persons standing at the door of the engine house. The court permitted testimony to be given of actual tests made by witnesses as to the view which could be had of persons and objects at and in the doorway under the conditions testified to by Edmundson. The court said of it that such evidence is competent if the conditions at the time testified to by the witnesses were the same as when the burglars entered the engine room, or so nearly the same that the testimony would be fairly applicable to the issue. What was proposed to be shown in this case was not an actual experiment, but it was the testimony of persons familiar with the conditions. The existence of obstructions to the vision between the two points was shown, and the witnesses having described the obstructions should have been permitted to state whether a person at the one point could see the object at the other. Such a statement is not the expression of an opinion but the statement of a fact, and the witnesses should have been permitted to answer these questions.

The right of a witness to express his opinion upon a non-technical subject, based upon facts which he has observed, when it is impossible by word of mouth or gesture to reproduce the data before the jury so that they may as intelligently as the witness draw an inference therefrom upon the subject, has been sustained in many cases. In *State v. Pruett,* 22 N. M. 223, an indictment for murder, the theory of the prosecution was that the homicide was accomplished by lying in wait, and witnesses for the prosecution testified that they saw knee-prints adjacent to a cedar bush near the scene of the homicide. One of the witnesses testified that the knee-print which he identified was located at the natural distance from the toe-print of a left foot and

that there was an impression of the ball of the right foot about opposite the knee-print, and other witnesses, who testified with less particularity, identified the impression on the ground as that of the impression of a knee. It was argued that a knee-print is of such an indefinite character as to be incapable of identification, and that therefore the testimony was a mere conclusion or opinion of the witnesses and not the evidence of the facts. The evidence was held to be competent, the court saying it was impossible for the witnesses to describe the knee-print with such detail as would be required to give the jury a fair idea of the data upon which the witnesses based their opinion that it was a knee-print, and illustrated the principle by the case of identification of a person, which, it is said, depends upon a vast number of details about the form of the person, the color of his eyes, the sound of his voice, his walk, and many other things which it would be impossible for the witness to reproduce by word of mouth before the jury. His identification of the person is a mere conclusion from many items or data which he could not describe, and which he might not, in fact, be able to state, and his identification would still be complete and perfect.

Testimony that a man could have seen a certain opening in a wall from the place where he was standing was held admissible in *Gibson* v. *Hatchett*, 24 Ala. 201, the court saying: "The general rule is conceded that a witness must testify as to facts, and facts only. But to this rule there are several well established exceptions, and it is often extremely difficult to define the line which separates opinion from fact. Evidence as to personal identity, the value of property, and handwriting, must always to a certain extent be a matter of opinion, and yet in these cases the witness is allowed to state his conclusions. (1 Greenleaf on Evidence, sec. 440.) The question propounded to the witness we regard in substance as simply whether an object was visible from a certain point, and are inclined to consider it as a

matter of fact rather than of opinion. There is no inference to be drawn, no circumstances to be weighed. It depends upon the exercise of a physical sense. But if it were a matter of opinion we should hold it admissible upon the principle which obtains in the other instances we have referred to."

The first of these witnesses, in answer to the question with reference to the stock room, on the second floor, what, if anything, there was to prevent a person seeing the elevator from that location, which was not objected to, answered he could not possibly see it. This answer was not responsive to the question but was not objected to. It did not, however, cure the error in sustaining the objection which was made to the other question and to the questions asked the other witnesses. The answer expected was so obvious from the question itself as to require no statement from the defendant as to what it expected to prove.

Objection was made to the comment of counsel on evidence which had been offered by the plaintiff and evidence which had been offered and excluded by the court. The plaintiff called as a witness a teacher whose school the deceased had attended and asked what her record showed in regard to the age of the boy. The attorney for the plaintiff also asked witnesses what the solder used by the deceased in his soldering work in the factory was made of. Both these questions were objected to and the objections were properly sustained, and the questions in regard to the solder were repeated after the court had held them incompetent. In his concluding argument to the jury the plaintiff's attorney stated that he had tried to get out of some of the witnesses what this solder was and what it was made of; that he thought it was a matter of common knowledge that it was poisonous. He also argued that this boy went to the Sheridan school, and if the defendant's superintendent wanted to obey the law, why did he not telephone to the school and ask for the record of that boy, and how long

would it have taken to do that? The attorney called the
jury's attention to the fact he had the school record, which
included the statement the boy made as to his age when
he went to the Sheridan school. The defendant's counsel
objected, and the court said, "Well, it can be mentioned in
argument without further comment." The plaintiff's attor-
ney then continued: "This is my point, your honor. They
had put in evidence—it was in evidence—the fact that this
boy stated he was seventeen years of age, if he did state
it. If that boy stated his age,—no matter what he stated
to that school teacher,—they had a right to put it in evidence
if they wanted it, and if they didn't want it, I say it is a
legitimate presumption. They had it in court and they did
not want it, and they could have put in that record and they
did not." An objection was sustained to this argument.
The plaintiff's attorney further argued that the defendant
had employed other boys under sixteen years of age with-
out the employment certificate required by the statute, clos-
ing with the statement, "So we have got three cases of
illegal employment there in two months." The defend-
ant's attorney objected, and the court said, "The question
is whether this boy was illegally employed." None of this
comment on evidence which was not before the jury was
proper. The court sustained objections to it and instructed
the jury that he was the sole judge of the admissibility of
evidence and what he did not admit he did not think com-
petent for them to consider, but counsel argued the evidence
to the jury the same as if it had been admitted, and did so
over repeated objections and the sustaining of those objec-
tions by the court. How is it to be known what the ef-
fect of this argument was on the jury? The attorney who
argued the case must have thought it would have some ef-
fect on them, and he got before the jury, at any rate, the
argument that the defendant was trying to keep the jury
from learning what the facts were and his claim that it was
common knowledge that the solder was poisonous, though

there was neither allegation nor evidence that it was poisonous and the fact had nothing to do with the case. The reference to it could have had no other object than to appeal to the passion and prejudice of the jury. The school record was incompetent, and there was no foundation to the claim that there was any legal presumption against the defendant from its objection to that record or the failure to introduce it, and the reference to the other two boys was a mere appeal to the prejudice of the jury for a verdict of guilty against the defendant for general disregard of the law. The whole argument on the excluded evidence was improper, and though the objections to it were sustained by the court, it was of a character to prejudice the defendant, and the case is of such a character that it cannot be said that the conduct of the plaintiff's attorney did not prejudice it. Such abuse of the right of argument justifies the setting aside of a verdict secured by it. *Chicago Union Traction Co.* v. *Lauth*, 216 Ill. 176; *Appel* v. *Chicago City Railway Co.* 259 id. 561; *Bishop* v. *Chicago Junction Railway Co.* 289 id. 63.

Objection was also made to a remark of the court, which need not be considered since the cause will be remanded for a new trial.

At the conclusion of the plaintiff's evidence the defendant made a motion to exclude the evidence on the ground of variance, because the declaration alleged as a basis of recovery that while the deceased with all due care and diligence for his safety was carrying, loading and unloading said cases or boxes in the factory to and upon the elevator and pulling the cable by hand for the purpose of hoisting the same, he was then and there internally injured and ruptured, whereby he got strangulated hernia, from which he became sick and died, and the acts of negligence proved, namely, running errands, on which he carried two boxes weighing about twenty-five or thirty pounds each, running a drill press or drill presses, and laying down in front of

an elevator a box that appeared to be heavy, do not tend in any way to prove these allegations of the declaration. The court overruled the motion and the defendant assigned this action of the court as error.

The allegations referred to in the declaration are not the basis of the plaintiff's cause of action. The declaration alleges as the cause of action in each count that the deceased, being between fifteen and sixteen years old, was employed by the defendant in operating a drill machine and in carrying, transferring, loading and unloading boxes filled with material of great weight and hoisting the same by an elevator, and while he was so employed he was under the control of defendant's foreman, and deceased was then and there unlawfully employed at said work. The basis of the action was the unlawful employment of the deceased at said work, and if the unlawful employment was proved it was not necessary that the plaintiff should prove that he was doing all the things alleged in the declaration or that he was specifically ordered to do what he was doing. If he was unlawfully employed and while engaged in doing any of the work mentioned in the declaration was injured that was sufficient. There was no variance because he was not operating a drill machine when he was injured, or hoisting boxes by the elevator from one story to another, or pulling the cable for operating the elevator. If the testimony of Maluchnik is to be taken as true, it tends to prove that the deceased was carrying, transferring and loading on the elevator boxes filled with material of great weight, even though the box about which Maluchnik testified had not yet been placed on the elevator,—and this is sufficient if none of the other kinds of employment are proved. The motion to exclude the evidence on the ground of variance was therefore properly overruled.

The defendant asked an instruction directing the jury to find it not guilty, which was refused, and it is argued that it should have been given for the reason, among others,

316—24

that the strangulated hernia is not shown to have been the result of the deceased's employment. The plaintiff's evidence tended to show that at noon the deceased was apparently well; at 3:30 he was seen to lower a heavy box; at 5:00 o'clock he went home, looking pale and sick, and on examination the next day was found to be suffering from strangulated hernia, which eventually caused his death. It is shown that the work which he was doing,—handling the heavy box,—was a sufficient cause for the strangulation of the hernia, but it also appears that other things causing pressure on the abdomen and compression of the abdominal muscles may also produce the same effect, as coughing, playing on a wind instrument, the wearing of a belt, any unusual strain, a sudden blow or a fall. The strangulation was first observed the next afternoon by Dr. Werelius, and it is argued that the evidence does not show that it was the result of the work of the boy but it is equally compatible with the evidence that it was caused by one of the other means mentioned. The trouble with this argument is that the evidence tends to show one sufficient cause for the condition and there is no evidence tending to show any other. The condition followed, and it cannot be said there was no evidence justifying the verdict that it was the result of the cause shown rather than of some other cause imagined but not shown.

Objection is made to instructions given for the plaintiff. The first instruction occupies eight printed pages of the abstract and consists of sections 2, 4, 5, 6, 10 and 11 of the Child Labor law. It ought not to have been given, for while it is the law, only a small part of it had anything to do with the issues in the case, which were the unlawful employment of the deceased and his consequent injury. It was necessary for the jury to search through all these eight pages to get the essential part which was applicable to these issues and might have been stated in eight lines. This confusing task should not have been imposed upon the jury

but they should have been instructed only as to the law applicable to the issues.

The second instruction was erroneous, for it directs a verdict for the plaintiff if the jury believe from the evidence that the deceased was under the age of sixteen years, that he was injured and was at the time working for the defendant, without requiring any finding that the injury was the result of the employment.

By instruction 6 the jury were told that the plaintiff was not required to establish his case beyond a reasonable doubt but only by a preponderance of the evidence. The plaintiff in error insists that this was error; that the foundation of the case is the unlawful employment of a child under sixteen years of age in violation of the statute, section 13 of which imposes a penalty for its violation of a fine of not less than $5 or more than $100; that is, the case is founded upon a criminal offense which is charged in the pleadings and must be established by the evidence to maintain the cause of action, and that the measure of evidence required in Illinois when a criminal offense is charged in the pleadings and must be shown to establish the cause of action or defense is such as removes every reasonable doubt of guilt. This rule, which has prevailed from very early in the history of the State, has been consistently adhered to and frequently announced, except in actions of slander or libel, in which it is provided by chapter 126 of the Revised Statutes of 1874 that it shall be competent for the defendant to establish the truth of the matter charged by a preponderance of the testimony. (*Crandall* v. *Dawson,* 1 Gilm. 556; *Darling* v. *Banks,* 14 Ill. 46; *McConnel* v. *Delaware Mutual Safety Ins. Co.* 18 id. 228; *Harbison* v. *Shook,* 41 id. 141; *Sprague* v. *Dodge,* 48 id. 142; *Germania Fire Ins. Co.* v. *Klewer,* 129 id. 599; *Grimes* v. *Hilliary,* 150 id. 141; *People* v. *Sullivan,* 218 id. 419; *McInturff* v. *Insurance Co. of North America,* 248 id. 92; *Oliver* v. *Ross,* 289 id. 624.) The rule had its origin in England, where there was a rea-

son for its existence arising from the fact that there, "where a defendant justifies words which amount to a charge of felony and proves his justification the plaintiff may be put on his trial by that verdict without the intervention of a grand jury." (*Cook* v. *Field,* 3 Esp. 133.) This reason never existed in this country. The rule is universal that in criminal prosecutions the evidence must satisfy the jury of the truth of the charge beyond a reasonable doubt. In general, where civil rights only are involved, the decision must be upon the preponderance of the evidence. The English rule, where the issue is upon a charge of crime made in the pleadings and necessary to be proved to maintain the action or defense, was followed in some of the States but has now generally been abandoned. (*Ellis* v. *Buzzell,* 60 Me. 209; *Matthews* v. *Huntley,* 9 N. H. 146; *Gordon* v. *Parmalee,* 15 Gray, 413; *Washington Ins. Co.* v. *Wilson,* 7 Wis. 169; *Weston* v. *Gravelin,* 49 Vt. 507; *Jones* v. *Greaves,* 26 Ohio St. 2.) The reason in which the rule seems to have had its origin is applicable only to cases where the charge was of a felony, and in general it is in such cases, only, that the rule has been applied. It will not be extended further but is limited to charges of felony. The offenses for which penalties are imposed by the statute are not crimes of a character the charge of which in a civil suit is required to be proved beyond a reasonable doubt, and the instruction properly so advised the jury.

The plaintiff in error by its request for instructions sought to have the jury advised that the contributory negligence of the parents of the deceased would bar the plaintiff's action, and that before he could recover the plaintiff must prove, by a preponderance of the evidence, that the employment of the deceased and his injury while employed were not due to the negligence or want of care of the parents. The common law has always given the right to maintain an action for a personal injury caused by the negligent act of another. The negligence of the plaintiff which

contributed to the injury was a defense to such action. No
action could be maintained at common law for the death
of a person caused by the negligent act of another. Such
action has been authorized by statute (in this State since
1853) to be prosecuted by the personal representative of
the deceased person for the benefit of the surviving wife
or husband and next of kin. The negligence of one of the
beneficiaries which contributed to the injury is a defense
to this statutory action. (*Hazel* v. *Hoopeston-Danville Bus
Co.* 310 Ill. 38; *Ohnesorge* v. *Chicago City Railway Co.*
259 id. 424; *City of Chicago* v. *Major,* 18 id. 349.) These
rules have no application to the present action, which is not
one for negligence. It is a statutory action for death caused
by a wrongful act, of which negligence is not an element.
The plaintiff is not obliged to allege or prove negligence of
the defendant or freedom from negligence of the plaintiff
or the persons for whose benefit the action is brought. The
act charged is not negligence but a criminal misdemeanor.

The Child Labor law was enacted, in the exercise of
the police power of the State, for the protection of chil-
dren whom it renders incapable of entering into the relation
of master and servant and relieves from the contractual ef-
fect arising out of that relation. Neither the doctrine of
contributory negligence nor of assumed risk applies to an
action by a child for an injury received by reason of his
employment by the defendant in violation of this law.
(*American Car Co.* v. *Armentraut,* 214 Ill. 509; *Strafford*
v. *Republic Iron Co.* 238 id. 371.) This action in the name
of the administrator of the deceased child is based on the
liability of the employer for the wrongful act of employing
a child under sixteen years of age in violation of the pro-
hibition of the Child Labor law. The negligence of the
parents is no defense to such an action. The defense of
contributory negligence is based on the common law doc-
trine that there can be no recovery for an injury caused by
the common, mutual, concurring negligence of both par-

ties, regardless of the degree in which their negligence, respectively, contributed to the injury. The defense does not apply to injuries willfully or intentionally inflicted. (*Walldren Express Co.* v. *Krug,* 291 Ill. 472; *Heidenreich* v. *Bremner,* 260 id. 439; *Illinois Central Railroad Co.* v. *Leiner,* 202 id. 624; *Wabash Railroad Co.* v. *Speer,* 156 id. 244; *Lake Shore and Michigan Southern Railway Co.* v. *Bodemer,* 139 id. 596.) Neither does the defense apply to such causes of action as result from the commission of a crime. A thief sued for the value of the stolen goods cannot allege as a defense the negligence of the owner in the care of them. Every man has a right to assume that no one will commit a crime, and his civil rights against an offender do not depend upon the care which he exercised to anticipate and prevent a crime by which he has suffered loss. It was not error to refuse the instructions requested as to the negligence of the parents of the deceased.

Section 13 of the statute, besides imposing upon the employer a fine, as has been mentioned, also imposes a fine of not less than $5 nor more than $25 upon any person who, having under his control a minor under the age of sixteen years, permits such minor to be employed in violation of the act. The plaintiff in error argues that the parents having violated this section of the statute by permitting their child to be illegally employed by the defendant cannot recover damages of the defendant for its illegal act which they permitted. This question does not arise on this record. No instruction was asked as to the effect of the parents having violated the act by permitting the employment of the minor contrary to its terms, and there is no evidence in the record which would authorize such an instruction. The parents of the deceased were asked, on cross-examination, as to when he started to work and for what employer, and their evidence is that he went and found some work but not that they had anything to do with his employment

or knew the nature of his work or the business of his employer. There are various employments in which the deceased might have been engaged without any violation of the Child Labor law, and there is no evidence in the record that the parents did not suppose that he was engaged in an employment of this kind.

The next of kin of the deceased were his parents and a younger brother fourteen years old. As to the brother the defendant asked the court to instruct the jury that they could allow nothing in their verdict to him on account of the death of the deceased except nominal damages. The court erred in refusing to give this instruction. There was no evidence of the brother having received any assistance from the deceased or being dependent upon him. It was wholly conjectural whether he would ever receive any pecuniary aid from his brother, and under such circumstances it was held in *Rhoads* v. *Chicago and Alton Railroad Co.* 227 Ill. 328, that only nominal damages could be recovered in an action by an administrator. The statute authorizes a recovery of such damages as the jury shall deem fair and just compensation with reference to the pecuniary injury resulting from the death to the wife and next of kin. The law presumes substantial injury to the parents, but the damages to collateral kindred are only such actual damages as are proved. There being no proof of such damages in this case as to the brother, the defendant was entitled to have the jury told that they could not assess anything more than nominal damages on account of the loss to the brother.

The judgments of the Appellate Court and the circuit court will be reversed and the cause remanded to the circuit court.                          *Reversed and remanded.*