(Nos. 50461, 50491 cons.—

DAVID BARTHEL *et al.*, Appellants, v. ILLINOIS CEN-
TRAL GULF RAILROAD COMPANY, Appellee.

*Opinion filed Nov. 22, 1978.—Rehearing denied Jan. 25, 1979.*

214

Thomas F. Londrigan and Roger E. Ryan, of Londrigan & Potter, P.C., of Springfield, for appellants David Barthel and Helen M. Hammond.

Michael J. Costello, of Springfield, for appellants Scott West and Herbert Rigney.

George B. Gillespie and Robert E. Gillespie, of Gillespie, Cadigan & Gillespie, of Springfield, for appellee.

Baker & McKenzie, of Chicago (Francis D. Morrissey and Edward J. Zulkey, of counsel), for *amici curiae* Atchison, Topeka & Santa Fe Ry. Co. *et al.*

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This action resulted from a collision between an automobile and an Illinois Central Gulf Railroad Company

freight train in Springfield at about 3:15 a.m. on November 22, 1969. The automobile crashed into a boxcar that was moving slowly over a railroad crossing. The driver, Robert Crifasi, was killed, as were two of his passengers, Frank Robinson and John Wallace. The other passengers, David Barthel, Scott West and Herbert Rigney, suffered injuries. In the ensuing actions in the circuit court of Sangamon County, which were consolidated for trial, Crifasi's administrator sued the railroad, while the surviving passengers and the administrators of the estates of the deceased passengers sued the railroad and Crifasi's administrator. The case was tried to a jury on counts of negligence and wilful and wanton misconduct. The jury returned verdicts against Crifasi's administrator in favor of the surviving passengers and the administrators of the deceased passengers' estates; verdicts were also returned in favor of the railroad against all plaintiffs. None of the judgments entered on these verdicts was appealed.

All plaintiffs except Crifasi's administrator, however, appealed the pretrial dismissal of additional counts bottomed upon alleged violations by the railroad of section 73 of the Public Utilities Act (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77) and praying for both compensatory and punitive damages. The trial court dismissed these counts because they failed to allege due care on the part of the plaintiffs or plaintiffs' decedents, and plaintiffs elected to stand on their complaints. In the appellate court plaintiffs argued strenuously that contributory negligence was not a bar to recovery under section 73 of the Public Utilities Act and therefore their complaints were sufficient without allegations of due care. The appellate court, however, held that contributory negligence was a defense to an action brought under the statute and affirmed the trial court judgment. (55 Ill. App. 3d 816.) We allowed leave to appeal.

Section 73 of the Public Utilities Act (Ill. Rev. Stat.

1969, ch. 111 2/3, par. 77) (which remains in effect with some changes in language not pertinent here) provided:

> "In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation."

Relying on this provision, plaintiffs alleged three statutory violations: failure to maintain a crossing in a safe condition (Ill. Rev. Stat. 1969, ch. 114, par. 62), failure to ring a bell when approaching a crossing (Ill. Rev. Stat. 1969, ch. 114, par. 59), and failure to use a headlight on a locomotive (Ill. Rev. Stat. 1969, ch. 114, par. 187). Plaintiffs also alleged violations of four Illinois Commerce Commission (ICC) rules implementing the Public Utilities Act: failure to maintain a crossing in a safe condition (ICC General Order No. 138, Rule 206), failure to maintain signs in a state of efficiency (ICC General Order No. 138, Rule 208), and failure to operate an automatic flashing light signal to give warning of a train's passage (ICC General Order No. 138, Rules 342 and 344).

Although section 73 of the Public Utilities Act will support an action for personal injuries resulting from a violation of ICC rules (*Churchill v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 127, 140), we do not believe that complaints alleging the statutory violations above noted are cognizable under section 73 of the Public Utilities Act. Plaintiffs do not deny that actions merely

alleging these violations are liable to the defense of contributory negligence. (*Peltz v. Chicago Transit Authority* (1975), 31 Ill. App. 3d 948, 952; *Sample v. Chicago, Burlington & Quincy R.R. Co.* (1908), 233 Ill. 564, 566-67; *Spikings v. Wabash R. Co.* (7th Cir. 1953), 201 F.2d 492, 498.) Plaintiffs, however, point to the words "any act, matter or thing prohibited, forbidden or declared to be unlawful" in section 73, and they argue that this language includes violations of statutes other than the Public Utilities Act. Plaintiffs therefore contend that the statutory violations alleged are actionable under section 73 and that contributory negligence is not a defense when the action is cast in this form. The initial flaw in this reasoning is that plaintiffs have taken the quoted language out of context. The essence of the statutory provision is: "In case any public utility shall do \*\*\* any act \*\*\* prohibited \*\*\* or shall omit to do any act \*\*\* required \*\*\* either by any provisions of this Act or any rule \*\*\* of the Commission, issued under authority of this Act, such public utility shall be liable \*\*\*." (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 77.) Thus by the plain language of the statute only violations of the Act or of ICC rules implementing the Act are actionable under section 73.

We need not address the question whether the administrators of the estates of the deceased passengers may bring death actions under section 73 alleging violations of ICC rules. The principal issue—whether contributory negligence is a defense in a section 73 action—is also raised by the surviving passenger plaintiffs. Its discussion by us should not be construed as indicating any opinion as to the standing of the administrator plaintiffs to raise the issue.

Ordinarily a defendant's violation of a statute designed to protect human life or property is *prima facie* evidence of negligence. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390.) In order to recover, a plaintiff must

show that the violation proximately caused his injury and that the statute was intended to protect a class to which he belongs from the kind of injury that he suffered. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 76-79.) Since the violation is only *prima facie* evidence of negligence, defendant may prevail by showing that he acted reasonably under the circumstances. (*Johnson v. Pendergast* (1923), 308 Ill. 255, 262-65.) Furthermore, contributory negligence or assumption of the risk will bar recovery unless the statute provides that these defenses are not available. *Jenkins v. Chicago & Eastern Illinois R.R. Co.* (1972), 5 Ill. App. 3d 954, 964; *Browne v. Siegel, Cooper & Co.* (1901), 191 Ill. 226, 233.

Section 73 of the Public Utilities Act, however, differs from the ordinary statute in that it expressly creates a cause of action. The provision declares unequivocally that a utility which violates the Act or implementing regulations shall be liable in damages for resulting injuries. Plaintiffs assert that this language is conclusive on the issue of contributory negligence. They argue that the cause of action, being a creature of the statute, bears no relation to the common law concepts of negligence and contributory negligence, and they conclude that since the statute does not provide that contributory negligence shall be a defense, it imposes strict liability on the utility for any violation. We agree with plaintiffs that the statutory provision is incompatible with the ordinary rule that violation of a statute is merely *prima facie* evidence of negligence. We do not agree, however, that the statute imposes strict liability on public utilities.

The rule in Illinois is that statutes in derogation of the common law are to be strictly construed in favor of persons sought to be subjected to their operation. The courts will read nothing into such statutes by intendment or implication. (*Summers v. Summers* (1968), 40 Ill. 2d 338, 342; *Anderson v. Board of Education* (1945), 390 Ill.

412, 422.) This court has held that the Public Utility Act is in derogation of the common law. (*Consumers Sanitary Coffee & Butter Stores v. Commerce Com. ex rel. Commonwealth Edison Co.* (1932), 348 Ill. 615, 618.) Section 73 is plainly in derogation of the common law because it prevents a defendant who has violated the Act from avoiding liability by showing that he exercised due care under the circumstances. Since the statute is in derogation of the common law, this court will not abrogate the common law defense of contributory negligence unless it plainly appears that the intent of the statute is to impose strict liability.

The courts have found a legislative intent to impose strict liability in several Illinois statutes, such as the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 94 *et seq.*), the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60 *et seq.*), the Coal Mining Act (Ill. Rev. Stat. 1977, ch. 96½, par. 251 *et seq.*), and the Child Labor Law (Ill. Rev. Stat. 1977, ch. 48, par. 31.1 *et seq.*). The rationale for reading strict liability into these statutes, however, rests on grounds of social policy inapplicable to the Public Utilities Act. The Restatement (Second) of Torts, after stating the general rule that when a defendant's negligence consists of violating a statute the plaintiff's contributory negligence is a defense, notes:

> "There are, however, exceptional statutes which are intended to place the entire responsibility for the harm which has occurred upon the defendant. A statute may be found to have that purpose particularly where it is enacted in order to protect a certain class of persons against their own inability to protect themselves." (Restatement (Second) of Torts sec. 483, comment *c* (1965).)

In such a case, permitting the defense of contributory negligence would defeat the purpose of the statute. Thus children and intoxicated persons are considered unable to protect themselves, and their contributory negligence

consequently does not bar their recovery. (*Overocker v. Retoff* (1968), 93 Ill. App. 2d 11, 21 (Dramshop Act); *Rost v. F.H. Noble & Co.* (1925), 316 Ill. 357, 373 (Child Labor Law).) Likewise employees are considered unable to exercise constant vigilance to protect themselves from hazardous working conditions, and statutes enacted to protect employees have therefore long been interpreted to exclude the defense of contributory negligence. *Schultz v. Henry Ericsson Co.* (1914), 264 Ill. 156, 164 (Structural Work Act); *Tomasi v. Donk Bros. Coal & Coke Co.* (1912), 257 Ill. 70, 74 (Coal Mining Act). See Prosser, *Contributory Negligence as Defense to Violation of Statute,* 32 Minn. L. Rev. 105, 118-22 (1948).

In the case of the Public Utilities Act, however, this social policy requiring imposition of strict liability on the defendant does not come into play. To evaluate this issue we must look not to section 73 but to the substantive provisions for violations of which section 73 gives a cause of action. Section 73 imposes a broad duty not to violate the Act or ICC rules; section 58 (Ill. Rev. Stat. 1969, ch. 111 2/3, par. 62) gives the Commission power to regulate grade crossings. In General Order No. 138 the Commission promulgated a detailed series of rules prescribing safety precautions to be observed by railroads in connection with grade crossings. These rules are designed to protect not a special class of persons but the general public. Many of the rules are merely declaratory of the common law. Rules 206 and 208, for example, the violation of which is alleged by plaintiffs in this case, impose on railroads the duty to maintain crossings and approaches "safe as to persons and property" and to maintain signs at crossings "in a good state of efficiency." Because the rules do not specify standards of safety or efficiency, a plaintiff, in order to prove a violation, must demonstrate that defendant's behavior was unreasonable, just as in a common law negligence action.

Other rules go beyond restating the common law and impose a specific duty on the railroad. Thus Rules 342 and 344, the violation of which is alleged by plaintiffs here, provide that flashing light signals shall operate for not less than 20 seconds before a train approaches a crossing and continue to operate until the rear end of the train clears the crossing. These rules go beyond the common law in that they fix a standard which substitutes for the common law negligence standard of reasonableness. A plaintiff need not show that the railroad was unreasonable, but only that the flashing light did not operate. The rules define specific conduct on the part of a railroad that, by virtue of section 73, will amount to negligence as a matter of law.

The fact that the defendant's negligence is conclusively presumed from his violation of the statute does not mean, however, that contributory negligence is unavailable as a defense. In none of the instances here does the nature of the rule allegedly violated suggest that a defendant should be strictly liable for its infraction. The comment of Dean Prosser is apposite here:

> "When the legislature declares the rule it does not change the nature or theory of the action to be brought for its violation. At most it removes any possible doubt as to the rule and takes away from the jury any issue as to whether such conduct is negligence. *** When the legislature goes beyond existing rules and establishes new ones, *** the courts must inevitably tend, so far as the civil action for the violation is concerned, to look for the field of tort liability which it most nearly resembles and into which it would fall if the rule had developed at common law." Prosser, *Contributory Negligence as Defense to Violation of Statute,* 32 Minn. L. Rev. 105, 109 (1948).

Another indication that strict liability would be inappropriate here is the duplication between some of the ICC rules and similar statutory provisions relating to railroads. Plaintiffs' complaints, for example, charge that, by failing to keep the crossing safe, the railroad violated

section 8 of "An Act in relation to fencing and operating railroads" (Ill. Rev. Stat. 1969, ch. 114, par. 62) and Rule 206 (ICC General Order No. 138, Rule 206). It is undisputed that contributory negligence is a defense to an action alleging a violation of section 8. (*Sample v. Chicago, Burlington & Quincy R.R. Co.* (1908), 233 Ill. 564, 566.) There is no reason to suppose that grounds of social policy exist favoring strict liability for an ICC rule when they do not exist for an identical statutory provision.

Plaintiffs' only remaining contention is that the mere existence of a statutory provision creating a cause of action for violating a law evinces a legislative intent to impose strict liability on defendants for such violations. We reject this contention. Enough has been said above to demonstrate that the language of section 73 is given its full weight if it is interpreted to mean that violations of the Act or rules will be conclusive evidence of the defendant's negligence. Moreover, other Illinois statutes dealing with situations resembling negligence impose civil liability for their violation yet do not abrogate the defense of contributory negligence. A statute (Ill. Rev. Stat. 1977, ch. 70, pars. 3, 4), for example, provides that one who operates certain machinery without statutorily prescribed safety devices is liable for any resulting damage. Contributory negligence has been held to preclude recovery in actions based on this statute. (*Wabash, St. Louis & Pacific Ry. Co. v. Thompson* (1882), 10 Ill. App. 271, 274-75.) Another statute (Ill. Rev. Stat. 1977, ch. 114, par. 80) provides that if a railroad runs any train through a town or city in excess of local speed limits it shall be liable for resulting damage to person or property. Contributory negligence is also a valid defense to actions brought under this statute. *Illinois Central R.R. Co. v. Hetherington* (1876), 83 Ill. 510, 516.

Accordingly, we hold that contributory negligence is a defense to actions brought pursuant to section 73 of the

Public Utilities Act alleging violations of ICC rules implementing the Act. We note that decisions of Arizona and Indiana courts interpreting statutory provisions of their States virtually identical to section 73 (Ariz. Rev. Stat. sec. 40–423 (1974); Ind. Code Ann. sec. 8–1–2–107 (Burns 1973)) are in accord with this result. In *Southern Pacific Transportation Co. v. Lueck* (1975), 111 Ariz. 560, 535 P.2d 599, the court held that a contributorially negligent plaintiff in a crossing accident brought under the statute must, in order to recover, show that the defendant railroad was guilty of wilful and wanton misconduct. In *Trustees of Jennie DePauw Memorial Methodist Episcopal Church v. New Albany Water Works* (1923), 193 Ind. 368, 140 N.E. 540, the court held that the statute was merely declaratory of the common law and did not create new liability on the part of a defendant.

In view of our disposition of the case, we need not consider plaintiffs' contention that certain remarks made during the trial of the negligence counts were prejudicial and should not be repeated on trial of the section 73 action.

Accordingly the judgment of the appellate court is affirmed.

*Judgment affirmed.*