SHARON R. KAWOLSKY, Indiv. and as Adm'x of the Estate of Frank Kawolsky, Deceased, Plaintiff-Appellant, *v.* McDOUGAL HARTMANN COMPANY, Defendant-Appellee.

Third District   No. 79-359

Opinion filed May 29, 1980.

Jay H. Janssen, of Peoria, for appellant.

Edward R. Durree, of Strodel & Kingery Association, of Peoria, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff Sharon Kawolsky filed suit against defendant McDougal Hartmann Company, among others, to recover for the death of her husband. At issue upon appeal is the sufficiency of count I of plaintiff's second amended complaint wherein she alleged that defendant had been a contractor engaged in the construction of Route 24 in Peoria County; that at 11:42 p.m. on November 22, 1976, a pickup truck operated by Frank Kawolsky collided with a flatbed semitrailer which was used in the construction work; that defendant was the general contractor in charge of construction with the right to stop the work and to control the acts of the subcontractors; that defendant knowingly and wilfully violated section 4 of "An Act to protect workmen and the general public from injury or death during construction * * *" (Ill. Rev. Stat. 1975, ch. 121, par. 314.4), which requires that warning signs, signals or barricades be used to mark each place where vehicles have an accessible approach to a closed portion of a highway, in that no signs were erected or maintained at the Mapleton entrance onto the closed portion of Route 24 to warn motorists that the highway was closed; and that as a direct and proximate result of defendant's wilful or knowing violation of the statute, Frank Kawolsky was killed when his vehicle struck the flatbed semitrailer which was obstructing the roadway.

Plaintiff's cause of action is based upon section 6 of the Act, which provides:

"Any contractor, subcontractor, or his authorized agent or driver of any motor vehicle who knowingly or wilfully violates any provision of this Act, shall be responsible for any injury to person or property occasioned by such violation, and a right of action shall accrue to any person injured for any damages sustained thereby; and in case of loss of life by reason of such violation, a right of action shall accrue to the widow of the person so killed, his heirs, or to any person or persons who were, before such loss of life, dependent for support on the person so killed, for a like recovery of damages sustained by reason of such loss of life." Ill. Rev. Stat. 1977, ch. 121, par. 314.6.

Defendant filed a motion to dismiss count I of plaintiff's second amended complaint for failure to allege that decedent was in the exercise of ordinary care and free from contributory negligence at the time of the fatal accident. The trial court granted the motion, and when plaintiff elected to stand by her complaint, the court entered an order dismissing count I with prejudice and finding no just reason to delay enforcement or appeal. Plaintiff has perfected this appeal from the order of dismissal.

The single issue before us is whether contributory negligence is a

defense to an action based upon a violation of section 4 of the roads and bridges act.

Plaintiff contends that the provisions of the roads and bridges act, which provide protection and compensation for construction injuries, are strikingly similar to the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60 *et seq.*), and, therefore, that the construction injuries statute was intended by the legislature to impose strict tort liability upon those who violated the statute just as is the case under the Structural Work Act. In holding that contributory negligence was not a defense to a Scaffold Act (now Structural Work Act) violation, the supreme court of Illinois stated:

> "As its title signifies, the Scaffold Act endeavored to give protection to workmen engaged in structural work by requiring certain standards for such work, and by providing both criminal penalties and civil liability for failure to comply therewith. The statutory purpose, as interpreted in the early *Schultz case* (*Schultz v. Ericsson Co.* 264 Ill. 156, 164) was 'to prevent injuries to persons employed in this dangerous and extrahazardous occupation, so that negligence on their part in the manner of doing their work might not prove·fatal.' It was held, therefore, that the doctrines of assumed risk and contributory negligence had no application to the Scaffold Act, since it was patterned after the mining statute, which had been similarly construed." *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 317-18, 175 N.E.2d 785.

The mining statute ("An Act providing for the health and safety of persons employed in coal mines," in force July 1, 1879), referred to in *Gannon*, provided for a cause of action to accrue "For any injury to person or property occasioned by any wilful violations of this act or wilful failure to comply with any of its provisions * * *." (1879 Ill. Laws §14, at 210.) In ruling that contributory negligence was not a defense to an action brought under the statute to recover for injuries suffered by a blacksmith in a fall from a platform while descending an escapement shaft in a coal mine, the supreme court, in *Carterville Coal Co. v. Abbott* (1899), 181 Ill. 495, 55 N.E. 131, stated:

> "A willful disregard by the employer of a duty imposed is a willful exposure to liability to injury of the employee, and is an act of negligence of so gross a character and so utterly in disregard of law that the question of contributory negligence, merely, has no place in the case as relieving·such owner, operator or manager from liability for an injury which has resulted solely from the fact of such negligence. * * * The neglect of the defendant to discharge its duty in providing hand-rails was the cause from

which the injury resulted, and it is not to be excused by any mere contributory negligence on the part of the plaintiff.

If one is injured as a result of some act of negligence on the part of the mine owner other than failure to comply with specific duties required by the statute, then the person injured must have been in the exercise of ordinary care before he can maintain an action, and must allege and prove that he was in the exercise of such care. The rule is different, however, under this legislation, where there is a willful failure to comply with the provisions of the statute, and the right of recovery cannot depend, in such case, on the exercise of ordinary care by the person injured, nor can he be precluded by mere contributory negligence. This legislation fixes a broad and distinct exception from the general rule." 181 Ill. 495, 502-03.

We think it no mere coincidence that section 6 of the roads and bridges act, which establishes liability for failure to meet certain definite safety standards, was phrased in language substantially similar to that used some 80 years earlier when the legislature imposed liability upon mine owners for violation of statutory safety standards. By the time section 6 of the roads and bridges act was enacted, Illinois law was well settled that, where injuries are alleged to result from a wilful violation of a statutory duty, contributory negligence is not a defense. (*E.g., VonBoeckmann v. Corn Products Refining Co.* (1916), 274 Ill. 605, 113 N.E. 903; *Reell v. Central Illinois Electric & Gas Co.* (1942), 317 Ill. App. 106, 45 N.E.2d 500.) Also, it has long been the law of Illinois that the word "wilful," as used in statutes imposing liability for wilful violations of safety standards, means a "conscious or knowing" omission of compliance with statutory regulations. (*Brimie v. Belden Manufacturing Co.* (1919), 287 Ill. 11, 122 N.E. 75; *Carterville Coal Co. v. Abbott* (1899), 181 Ill. 495, 55 N.E. 131.) We find the conclusion inescapable that the legislature intended to impose strict liability upon those responsible for knowing, wilful violations of the construction injury provisions of the roads and bridges act. See *Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 383 N.E.2d 1242; C. Sinder, *Another Scaffold Act* ???, 59 Ill. B.J. 842 (1971).

Defendant relies upon *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 384 N.E.2d 323, to support its position that the trial court ruled correctly in dismissing plaintiff's complaint. In *Barthel* the supreme court held that contributory negligence was a defense to an action brought against a railroad under section 73 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 77). The court invoked the rule that statutes in derogation of the common law are to be strictly construed and then said that "this court will not abrogate the common law defense

of contributory negligence unless it plainly appears that the intent of the statute is to impose strict liability." (74 Ill. 2d 213, 221, 384 N.E.2d 323, 327.) The court discussed the underlying social policy as it distinguished the Public Utilities Act from those statutes which have been held to impose strict liability.

Without repeating the lengthy statutory analysis contained in *Barthel*, we think the determinative factor to be the difference in the statutory language imposing liability. The Public Utilities Act, section 73, imposes liability where a utility "shall do * * * any act * * * prohibited, forbidden or declared to be unlawful, or shall omit to do any act * * * required to be done" (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 77) by statute, rule, regulation or administrative order. Although section 73 also provides for additional damages to be awarded in the event the court finds that the act or omission was wilful, clearly "wilfulness" is not an essential element of the cause of action created under section 73. As the *Carterville Coal Co.* decision made clear, where, as in the roads and bridges act, a wilful failure to comply with a statute gives rise to an express statutory cause of action, the right of recovery does not depend upon the exercise of ordinary care by the person injured.

Defendant also seeks to distinguish the road and bridges act from other strict liability statutes on the ground that the regulations involved here were designed for the protection of the general public while the coal mining statute, the Structural Work Act, and others imposed a specific duty for the protection of employees who might not otherwise be able to insist upon the required safety precautions. This factor was discussed in *Streeter v. Western Wheeled Scraper Co.* (1912), 254 Ill. 244, 98 N.E. 541, where the court compared a Chicago ordinance requiring safety gates on elevator shafts with a 1909 State law requiring dangerous power driven machinery and moving parts to be properly enclosed or protected. The court noted that the ordinance concerning elevator gates was in the interest of the public generally while the factory safety statute imposed a specific duty in favor of employees. Contributory negligence had previously been recognized as a defense to a violation of the elevator ordinance, but was held not to be available to the factory owner in *Streeter.* In *Barthel,* the court also stated that contributory negligence should not be permitted to defeat the purpose of a statute which is designed to protect a certain class of persons who were unable to protect themselves and cited *Overocker v. Retoff* (1968), 93 Ill. App. 2d 11, 21, 234 N.E.2d 820 (Dramshop Act); *Rost v. F. H. Noble & Co.* (1925), 316 Ill. 357, 373, 147 N.E. 258 (child labor law); *Schultz v. Henry Ericsson Co.* (1914), 264 Ill. 156, 164, 106 N.E. 236 (Structural Work Act); *Tomasi v. Donk Brothers Coal & Coke Co.* (1912), 257 Ill. 70, 74, 100 N.E. 343 (coal

mining act); Prosser, *Contributory Negligence as Defense to Violation of Statute*, 32 Minn. L. Rev. 105, 118-22 (1948).

The statute involved in the case at bar is titled "An Act to protect workmen and the general public from injury or death during construction * * *." If defendant's argument were to prevail, contributory negligence would be a bar here where plaintiff was not a construction workman but was a member of the general public, but would not be a defense had this been a suit brought by a construction worker. We think such a distinction would be artificial. Neither workmen nor the general public can protect themselves from injury where a highway or bridge has been closed without warning signs or devices unless all persons proceed upon all highways and bridges at all times as though construction obstructions are to be expected without warning. To impose such a standard of due care upon all drivers would be totally unrealistic.

The statute in question was designed to impose strict liability in this circumstance, and we find that the trial court erred in dismissing the complaint. Accordingly we reverse the order of the Circuit Court of Peoria County, and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BARRY and SCOTT, JJ., concur.