TONY STAFFORD, as Special Adm'r of the Estates of Willie Tabb *et al.*, Deceased, Plaintiff-Appellant, v. HOWARD BORDEN *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—92—0812

Opinion filed March 25, 1993.

Paul Armstrong, of Chicago, for appellant.

Stern & Rotheiser, of Chicago (Robert D. Shearer, Jr., of counsel), for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:

On March 21, 1986, plaintiff, in his representative capacity, filed the instant action seeking recovery by reason of the deaths of the four decedents on December 7, 1985. The case proceeded to trial before a jury, and defendants, Howard Borden (Borden) and Booth & Gray Shell (Booth), moved for a directed verdict. The trial court granted the motion and entered judgment in favor of defendants, and plaintiff now appeals.

Plaintiff's decedents were killed on December 7, 1985, when the apartment building in which they lived, at 1475 E. 70th Street in Cook County, was the object of an arson fire. The fire was set by Harvey Julian Allen (Allen).

Allen had purchased a small quantity of gasoline from Borden, an attendant at a gasoline station operated by Booth at 7300 S. Stony Island Avenue in Chicago. At the time of the purchase, Allen placed the gasoline in a pint-size insecticide can that was red and black in color. Although Allen pumped the gas himself, Borden was aware that Allen had put the gas into the insecticide can. Allen told Borden that he had run out of gas nearby and needed only a small amount to start his vehicle and drive it to the gas station. After purchasing the gas, Allen went to the apartment building at 1475 E. 70th Street and set the fire that led to the deaths of the plaintiff's decedents.

■■ The case against Borden and Booth proceeded to trial upon the allegations contained in count III of plaintiff's third amended complaint. Count III was an action for negligence-based wrongful death and charged that Borden and Booth committed the following negligent acts or omissions:

"(a) sold and dispensed gasoline to Harvey Allen in violation of the Statutes and Rules cited above;

(b) sold gasoline under circumstances which allowed said Harvey Allen to disguise the nature of the contents of his 'Black Flag' insecticide can;

(c) failed to ascertain the use for which Harvey Allen wished to obtain gasoline in a 'Black Flag' insecticide can;

(d) failed to properly instruct Howard Borden as to the safety rules for dispensing motor fuels."

The "Statutes and Rules" to which paragraph (a) above referred included section 1 of "An Act prescribing the color and label for gasoline or benzol receptacles"[1] (Ill. Rev. Stat. 1983, ch. 127½, par. 151) (hereinafter the Gasoline Receptacle Labeling Act), and section 1 of "An Act to regulate the storage, transportation, sale and use of gasoline and volatile oils" (Ill. Rev. Stat. 1983, ch. 127½, par. 153) (hereinafter the Gasoline Storage Act). Section 1 of the Gasoline Receptacle Labeling Act, as in effect at the time of the alleged occurrence in this case, provided as follows:

"All receptacles for gasoline or benzol used in the retail trade, except tank wagons or trucks, shall be red and shall be labeled 'gasoline' or 'benzol' as the case may be *** and it shall be unlawful in such retail trade or anything pertaining thereto to put gasoline or benzol into any receptacle of any other color than red and not labeled as above required." (Ill. Rev. Stat. 1983, ch. 127½, par. 151.)

Section 1 of the Gasoline Storage Act provided as follows:

"It shall be unlawful for any person, firm, association or corporation to keep, store, transport, sell or use any crude petroleum, benzine, benzol, gasoline, naphtha, either [sic] or other like volatile combustibles, or other compounds, in such

---

[1]The enactment of section 1 upon which plaintiff relied in his complaint (see Ill. Rev. Stat. 1985, ch. 127½, par. 151) was not yet in effect at the time of the occurrence in this case. The differences between the language of that enactment and the correct one, however, are immaterial to this case and did not affect the outcome herein.

manner or under such circumstances as will jeopardize life or property." (Ill. Rev. Stat. 1983, ch. 127½, par. 153.)

The complaint also relied upon regulations governing such storage which were promulgated by the State Fire Marshal. The first provided in pertinent part as follows:

"No motor fuels shall be dispensed at any service station except directly into the fuel tanks of motor vehicles *** provided, however, that individual sales up to twelve (12) gallons may be made in metal or approved containers as defined in Section 170.150 (d)(7)(G), (H), and (I) when painted or colored red and labeled in full conformity with 'An Act prescribing the color and label for gasoline or benzol receptacles,' Illinois Red Can Gasoline Law, (Ill. Rev. Stat. 1983, ch. 127½, para. 151-152) ***." (41 Ill. Adm. Code §170.15 (1991).)

The second regulation provided, in relevant part:

"The following rules shall be followed at all self-service stations ***:

(7) It shall be the responsibility of the attendant:

A) To carefully observe the dispensing of Class I liquids into portable containers,

* * *

F) To refuse service to any customer who appears to lack the ability to properly and safely utilize the equipment (*e.g.* intoxication), inability to place the nozzle in the gas tank receptacle, inability to follow written or oral instructions of the attendant, and whether [*sic*] the person is too young to be aware of the hazards and safe dispensing of motor vehicle fuels,

G) Inspect all portable containers for conformance to Illinois Statutes and these rules.

i) All portable containers for gasoline or benzol used in the retail trade shall be red and shall be labeled 'gasoline' or 'benzol' as the case may be, in letters of a height of not less than one-half inch, and it shall be unlawful in such retail trade, or anything pertaining thereto to put gasoline or benzol into portable containers of any other color than red and not labeled as required by these rules or to use portable containers not complying with these rules.

* * *

(14) All attendants and other employees of the service station shall be instructed in *** safety regulations for the dis-

pensing of motor fuels \*\*\*." 41 Ill. Adm. Code §170.150(d) (1991).

At the close of plaintiff's evidence, Borden and Booth moved for a directed verdict, which was granted by the trial court. On appeal, plaintiff maintains that the motion was improperly granted because Borden's violation of the above statute constituted *prima facie* evidence of negligence.

A motion for directed verdict should be granted only where all of the evidence, when viewed in the light most favorable to the opponent of the motion, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Initially, we note that there is no evidence in the record suggesting that the manner in which Allen dispensed the gasoline into the insecticide can had anything whatever to do with the fire that took the lives of plaintiff's decedents. It is also clear from the record that, despite plaintiff's allegations to the contrary, Allen informed Borden that Allen was obtaining the gasoline to start a stalled vehicle. There is nothing in this record to support the conclusion that Borden knew or should have suspected that Allen intended to use the gas for any purpose other than that which he articulated. Thus, the only question for our analysis is whether the violation of statutes and regulations restricting the physical characteristics of containers into which gasoline may be dispensed can support a verdict under the circumstances of this case.

■ The violation of a statute or regulation designed for the protection of human life or property is generally *prima facie* evidence of negligence (*Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 384 N.E.2d 323; *N.W. v. Amalgamated Trust & Savings Bank* (1990), 196 Ill. App. 3d 1066, 554 N.E.2d 629), provided certain conditions exist. Namely, a plaintiff must prove that the statute was designed to protect a class of persons to which he belongs from the type of injury he suffered. (*Barthel v. Illinois Central,* 74 Ill. 2d at 220.) Additionally, the plaintiff must establish that the statutory violation was the proximate cause of his injury. (*Batteast v. Wyeth Laboratories, Inc.* (1990), 137 Ill. 2d 175, 194, 560 N.E.2d 315.) The determination of whether these conditions have been satisfied is a question of law. *Batteast v. Wyeth,* 137 Ill. 2d at 194.

■ In the instant case, there is no dispute that Borden violated the Gasoline Receptacle Labeling Act, the Gasoline Storage Act,

and the regulations of the State Fire Marshal when he sold gasoline to Allen in a receptacle other than an approved one. The requirement that gasoline be sold only in an approved container, however, bears no relationship to the prevention of arson. Rather, the purpose behind the statutes and rules at issue in this case is to facilitate the safe transport and storage of certain highly flammable and dangerous liquids. Unquestionably, the protection of human life and property is inherent in this purpose; however, the specific dangers these rules address are those attending the possible leakage of flammable liquids from their containers, or the potential for disaster if persons inadvertently come in contact with such liquids unaware of their nature. (See *Morales v. City of New York* (1988), 70 N.Y.2d 981, 521 N.E.2d 425, 526 N.Y.S.2d 418.) There is nothing in the language of the statutes or the rules promulgated by the fire marshal that indicates that the prevention of arson was the intent behind their enactment.

Apart from the fact that Borden sold the gasoline to Allen in an improper receptacle, there is no evidence in this record that the sale was made under circumstances that would jeopardize life or property. Nothing in the record of this case indicates that Borden should have had any reason to suspect that Allen was purchasing the gasoline for a purpose other than the one he articulated. Finally, in the absence of any evidence that anyone saw Allen enter the apartment building with the insecticide can containing gas, it is pure speculation on plaintiff's part that, had the gasoline been in a properly labeled and approved container, Allen's access to the building would have been impeded. Verdicts cannot be based upon surmise, speculation or conjecture. *Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 468 N.E.2d 422.

For the reasons stated above, we are of the belief that the trial court properly directed a verdict in favor of Borden and Booth.

Judgment affirmed.

JIGANTI, P.J., and CAHILL, J., concur.